527 A.2d 525

**Kathleen L. LOMBARDO, now by marriage Kathleen Grisar, Appellee,**

v.

**Joseph F. LOMBARDO, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 29, 1987.

Decided June 9, 1987.

---

140

Elliot B. Edley, Wilkes-Barre, for appellant.

Lawrence D. MacDonald, Susan A. Maza, Wilkes-Barre, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This appeal concerns the custody of a nine year old boy, Frank J.R. Lombardo. Following extensive testimony taken at a two-day hearing, the Court of Common Pleas of Luzerne County determined that the child's best interest would be served by transferring primary custody of Frank to his father, Joseph F. Lombardo, Appellant herein, and modified an earlier custody award in favor of the mother. The Superior Court undertook an independent review of the record and by *per curiam* order reversed the trial court's determination thereby retaining custody in the mother, now Kathleen Grisar.[1] Since it appeared that Superior Court exceeded its proper scope of review in this matter we granted Appellant father's petition for review.[2] We now reverse and reinstate the trial court's order.

The record discloses that Joseph and Kathleen were married on April 23, 1976. This marriage produced one child, Frank, born on November 15, 1977. The parties separated in early 1979, and were divorced on September 9, 1981. In accordance with a stipulated agreement which was part of

1. *Lombardo v. Lombardo,* 345 Pa.Superior Ct. 628, 496 A.2d 858 (1985).

2. See Judicial Code of 1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978. As amended by the Judiciary and Judicial Procedure Act of 1980, Oct. 5, P.L. 693, No. 142 § 402(a), 42 Pa.C.S. § 724.

the divorce proceeding, and which was subsequently entered as a court order, the mother received primary custody of Frank and the father received partial custody. The agreement provided that the father would have custody every other weekend, on holidays, and in the summer beginning one week after school ended through July 31st. During the summer the mother had the option of bi-weekly custodial visits. Both parents lived in Pennsylvania, the mother residing in suburban Philadelphia, and the father in Luzerne County.

Initially, the arrangement seemed to work well. The mother was employed and arranged for day care for Frank at the Lane Montessori School. The father had extensive contact with Frank and there was apparently full cooperation between the mother and father. The first difficulty arose in March of 1983, when the mother experienced employment problems and severe financial difficulties. She voluntarily transferred custody of Frank to his father. The mother testified that this transfer of custody was based on her severe financial problems and job pressures. She could not afford the apartment in which she and Frank lived, and she had been advised by her employer that if her job performance did not improve she would be dismissed. The record reveals that she maintained an apartment in the fashionable Main Line area of Philadelphia, the rent for which exceeded $500.00 per month. She also had to pay over $30.00 per week for day care services while she worked. Her take home pay was approximately $217.00 per week and the father was required to pay $45.00 per week in support. Later, when she lost her job, her income was reduced to unemployment benefits of approximately $150.00 per week. While the mother stated that the reason for this temporary relinquishment of custody was that she could no longer afford the apartment and that she intended to find another place, she never gave up the apartment until her subsequent marriage on March 31, 1984.

Frank was taken by his father from the Philadelphia area and relocated to his parental grandparent's home in Lu-

zerne County where Appellant lived with his parents. By this time, Frank was in kindergarten and attended Penn Wynne School in the Philadelphia area, while in his mother's custody. Upon Frank's arrival in Luzerne County, Appellant enrolled him in the Pittston Area School where he finished out the year. Frank lived with his father for approximately five and one-half months. During this time, the mother had very limited contact with Frank because of her financial circumstances. Just prior to the start of the 1983–1984 school year, Appellant reluctantly returned Frank to the custody of his mother.

Once again, because of prolonged unemployment, the mother experienced severe financial difficulties in the spring of 1984. This resulted in her relinquishing custody of Frank to Appellant voluntarily on March 30, 1984.

At this time, the mother was still residing in the apartment which she had decided the previous March that she could not afford, and her financial condition was such that she could not pay her rent and she was faced with the termination of her unemployment benefits in June, 1984. She testified that she had no place to stay and no serious prospect of employment. For the second time, Frank had to be transferred from the Penn Wynne school to the first grade of the Pittston Area School. He again took up residence with Appellant in the home of his grandparents. Appellant alleged that this second transfer of custody was to be permanent, while the mother claims it was only a temporary arrangement. Nevertheless, on July 2, 1984, Appellant filed a Petition for Modification of the existing custody order seeking custody of the child. The Petition alleged that the mother could not cope with the needs of the child or provide him with a secure and stable home environment because of her severe financial problems, and that this failure had produced difficulties for the child, particularly educational problems. There was undisputed testimony presented to the effect that Frank is a very poor student and was lagging behind his peers. Frank's first grade teacher testified that she recommended that he repeat the

first grade because he had not mastered the concepts required for his age group. The principal of the elementary school opined that the lack of continuity in the child's educational development due to the continual transfer from school to school was not beneficial to the child and led to his problems.

During this second transfer of custody, the mother had only one physical contact with Frank. She had remarried on March 31, 1984, and from that date through July, 1984, the only time she saw Frank was in early June for a re-enactment of her wedding ceremony. The mother alleged that during this time she maintained contact with Frank by telephone because she could not afford visits, and that she made over thirty (30) calls during this period. These were not substantiated by the evidence presented at the hearing. From the time of her remarriage on March 31, 1984, to June 17th, the mother divided her time between staying with her in-laws in the Philadelphia area and her parents in Cumberland, Maryland. On June 17, 1984, she left to go to Fort Sill, Oklahoma, where her new husband, who was in the Marine Corps, was assigned for temporary duty. She remained there until the end of July, 1984. Upon returning from Oklahoma and learning of Appellant's Petition for Modification of custody, Appellee called Appellant on August 2, 1984, and demanded return of Frank. Appellant refused and Appellee filed a Petition for Contempt.

On August 7, 1984, Appellant agreed to an interim order for partial custody to Appellee pending the hearing on the Petition for Modification. At this time, Appellant was advised by Appellee that she was moving to North Carolina with her new husband and wished to take Frank with her. She also advised Appellant that she anticipated living with Frank and her husband in base housing at Camp Lejeune, and that she was expecting another child in December, 1984. The mother presented no evidence as to where they would actually live nor where Frank would attend school. She was still unemployed and had no intention of finding

work as she was expecting another child. She testified that she was now able to take care of Frank and provide a home for him, however, she presented no evidence to show that her financial situation had improved, other than her remarriage and a *hope* that she would be eligible for governmental benefits as the spouse of a soldier, and that this might improve her financial condition. Mr. Grisar, her husband, testified that he would receive no additional pay due to his new family, but would get an allowance for housing. However, in reviewing their financial situation, Mr. Grisar expressed doubt as to his ability to support his wife.

Hearings were held on both the Petition for Modification and the Petition for Contempt on August 16, and 24, 1984. The trial court then awarded primary custody to Appellant, concluding that he had established significant changed circumstances since the entry of the Court Order of 1981, which warranted a reevaluation of the factual situation concerning Frank. The trial court considered the current circumstances of both parents and concluded that the best interests of the child would be served by transferring primary custody to the father, subject to partial custody rights for the mother. The trial court believed this transfer necessary because of the chronic and current instability in the mother's ability to provide a safe and secure home environment for the child. The court concluded that the mother's financial difficulties were largely of her own making due to living beyond her means. The court further concluded that she appeared to be incapable of budgeting her resources in such a fashion as to meet the basic needs of herself and the child. The court found that this had a negative effect on Frank and that to return him to his mother without first remedying the situation would result in a continuation of that bad effect. Because of the educational problems experienced by Frank, the court felt it would be beneficial to his educational development for him to remain in the same school with the same classmates and same teacher for at least one full year. The court also found that the mother's recent marriage and plan to move to North Carolina would produce an uncertain environment

for the child, and that financial security remained very questionable. The court was careful to note that it would be favorably disposed to a re-hearing if the mother is able to establish permanent residence in North Carolina and demonstrates a real ability to provide for Frank. The Appellee's Contempt Petition was denied.

Superior Court reversed on appeal, finding that the trial court erred in granting the father's Petition for Modification of the custody order. In Superior Court's opinion, the father failed to demonstrate the substantial change in circumstances necessary for modification of a custody order. Further, Superior Court stated that even if substantial change was shown, the child's best interests would be served by retaining custody in the mother. The court thereupon conducted its own review of the record to find that the mother's relinquishing custody of Frank to Appellant for financial reasons on two occasions was only temporary in nature and was in the child's best interest. Therefore, the mother should not be penalized for such action. Next, Superior Court determined that there was no evidence to support the trial court's finding that a substantial change in circumstances existed in Appellee's chronic and current instability and inability to provide for a safe and secure home environment for the child. Finally, Superior Court found that there was no evidence of a nexus between the child's difficulties in school and the mother's "parenting" ability. Based on these findings, Superior Court concluded that the fact that the mother had custody since the parties were separated in 1979 weighed in favor of her retaining custody.

Appellant asserts in this appeal that Superior Court exceeded its proper scope of review in reversing the findings of the trial court, contending that the reviewing court substituted its own findings for those of the trial judge absent a finding of gross abuse of discretion, and has misapplied and misinterpreted the decision of this Court in *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800 (1984), and *Commonwealth ex rel. Spriggs v.*

*Carson,* 470 Pa. 290, 368 A.2d 635 (1977). We agree, and for the reasons discussed below we reverse the order of Superior Court and reinstate the order of the trial judge awarding primary custody of Frank to his father.

We are called upon in this case to settle once again the question of the appropriate standard of review in custody matters. A broad or searching appellate review in custody cases is entirely proper. Mr. Justice Nix, now Chief Justice, writing for a plurality of the Court, stated in *Commonwealth ex rel. Spriggs v. Carson, supra:*

> It is now beyond dispute that the sole issue to be decided in a custody proceeding between contending parents is the best interest of the child ... In order to insure such a focus, our law has long recognized that the scope of review of an appellate court reviewing a custody matter is of the broadest type. Thus, an appellate court is not bound by deductions and inferences made by a trial court from the facts found, ... nor must a reviewing court accept a finding which has no competent evidence to support it. (citations omitted)

470 Pa. at 294–95, 368 A.2d at 637.

A broad scope of review, however, does not vest in the reviewing court either the duty or the privilege of making its own independent determination.

> ... [T]his broader power of review was never intended to mean that an appellate court is free to nullify the fact-finding function of the hearing judge. It is a principle which runs through all our cases that the credibility of witnesses and the weight to be given to their testimony by reason of their character, intelligence, and knowledge of the subject can best be determined by the judge before whom they appear.

*Carson, supra,* 470 Pa. at 295, 368 A.2d at 637, citing *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 177, 97 A.2d 350, 353 (1953).

It was further emphasized by Mr. Justice Nix in *Carson,* that:

... [T]his fundamental limitation of a reviewing court's power has been articulated by the Superior Court as well in defining its own scope of review in custody matters: "... [W]e have recognized that the trial judge is in a position to evaluate the attitudes, sincerity, credibility, and demeanor of the witness. Because we are not in such a position, we have recognized that a trial judge's determination of custody should be accorded great weight. *Only where we are constrained to hold that there was a gross abuse of discretion should an appellate court interfere with the decisions of the hearing judge." Commonwealth ex rel. Rainford v. Cirillo,* 222 Pa.Superior 591, 597–98, 296 A.2d 838, 841 (1972). (Emphasis added)

*Carson,* 470 Pa. at 295–96, 368 A.2d 637.

This Court very clearly set forth the proper standard of appellate review in *Commonwealth ex rel. Robinson v. Robinson, supra;* therein we stated that appellate review in custody cases should be confined to the issues presented in accordance with the above cited principles enunciated in *Carson.*

... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support the trial court's factual conclusions, but may not interfere with those conclusions *unless they are unreasonable in light of the trial court's factual findings. Bohachevsky v. Sembrot,* 368 Pa. 228, 81 A.2d 554 (1951); and thus, represent a gross abuse of discretion, *Carson. See also, Andrikanics v. Andrekanics,* 371 Pa. 222, 89 A.2d 792 (1952). (Emphasis in original).

*Robinson,* 505 Pa. at 237, 478 A.2d at 806.

 Upon our review of the entire record, we are satisfied that the trial judge's findings were supported by competent evidence. Accordingly, we hold that Superior Court erred by nullifying the findings of the trial judge and making its own findings upon its review of the record. It is quite clear from the comprehensive opinion of the trial judge, the Honorable Chester B. Muroski, that he carefully

considered the matter and based his decision on his determination that, in view of the current circumstances of the mother, Frank would have a more stable environment with his father, and that it was in Frank's best interest that he be placed in his father's custody. The reasons supporting this determination are fully set forth in the opinion of the trial judge, and there is more than sufficient evidence to support the findings of fact. Thus, absent a finding of gross abuse of discretion they may not be disturbed.

Reversed.