**v.**

**R.W., Appellee. (Two Cases)**

Superior Court of Pennsylvania.

Argued Aug. 23, 1990.

Filed Sept. 26, 1990.

Steven E. Wolfe, Holland, for appellant.

Marvin L. Portney, Bristol, for appellee.

Before CIRILLO, President Judge, and MONTEMURO and MONTGOMERY, JJ.

MONTEMURO, Judge:

This is an appeal from two orders respectively restoring appellee's partial custody [1] of the parties' minor daughter, and awarding him $2,000 in counsel fees.

The child who is the subject of this litigation was born August 8, 1985. Her parents separated in February of 1987, and during the next five months, until their December 1987 divorce, there were apparently several separations and attempts to reconcile. Appellant retained primary custody of the child throughout. In November of 1987, following one of the child's visits with appellee, appellant made contact with Bucks County Children and Youth Services with the objective of instituting a complaint against appellee. This complaint, and others which followed, contained aver-

---

**1.** Although appellee's access to the child is referred to as "visitation," it is in fact partial custody, the former term being reserved to describe a parent's right to call to see the child wherever he or she might be, and does not include, as does the term "custody," the right of a parent to take possession of the child. *Scott v. Scott,* 240 Pa.Super. 65, 368 A.2d 288 (1976).

ments that appellee had sexually abused the child, and that his partial custody rights should be severely curtailed or terminated altogether. The children's authority notified appellant the following January of its conclusion that the complaint was unfounded. After a custody hearing held January 21, 1988, primary custody was affirmed in appellant, with substantial partial custody in appellee. The trial court found, following day long proceedings at which seven witnesses testified on appellant's behalf, that no evidence of sexual abuse had been demonstrated by appellant, whom the court concluded was not a credible witness.

In March of 1989, appellant filed an emergency petition for modification of the custody order, which was heard by a judge other than the who had presided over the original proceedings. Appellee's rights to custody of the child were suspended, and contact was restricted to supervised daytime visits. At approximately the same time, appellant filed a second sexual abuse complaint with Children and Youth Services. Of this complaint appellant received word in May that the agency had concluded it to be unfounded. Meanwhile, the restrictive visitation order was vacated in April, and a hearing on the matter set for May; no appeal was taken from this alteration.

On May 14, 1989, after a weekend visit with appellee, appellant brought the child to Children's Hospital for examination. The on duty pediatric resident found that although the child's vaginal area was more irritated than could be considered normal, apart from the child's statements, the physical signs were inconclusive, being equally consistent with causes other than sexual abuse. However, because the child was fearful and had given verbal indications of abuse, another complaint was instituted with the children's agency. A second emergency petition for modification of the January 21, 1988 custody order was lodged contemporaneously with the third complaint, and again the January order granting appellee substantial partial custody was vacated pending further hearings, which were held on June 16, and September 1, 1989. During this period appellee and

his family engaged the services of a registered pediatric nurse to be present during visits with the child. The nurse, along with the psychologist on whose report the first emergency petition was granted, testified during these hearings. Again appellant's evidence was rejected as incredible by the trial court; appellee's partial custody was restored, and appellant was assessed counsel fees. This appeal followed.

Appellant has presented us with a catalogue of alleged errors which we will address seriatim. Preliminarily, however, we note that:

> Our paramount concern in custody matters is the best interest of the child, including the child's physical, intellectual, emotional and spiritual well-being. *Brooks v. Brooks*, 319 Pa.Super. 268, 466 A.2d 152 (1983). In these matters, our scope of review is broad. *Burke v. Pope*, 366 Pa.Super. 488, 492, 531 A.2d 782, 784 (1987); However, "... this broader power of review was never intended to nullify the fact-finding function of the hearing judge. It is a principle which runs through all our cases that the credibility of witnesses and the weight to be given to their testimony by reason of their character, intelligence, and the knowledge of the subject can best be determined by the judge before whom they appear." *Lombardo v. Lombardo*, 515 Pa. 139, 147, 527 A.2d 525, 529 (1987) (citations omitted). We, therefore, are "empowered to determine whether the trial court's incontrovertible factual findings support the trial court's factual conclusions, but may not interfere with those conclusions *unless they are unreasonable in light of the trial court's factual findings* ...; and thus, represent a gross abuse of discretion, ... (Emphasis in original)." *Id.*, 515 Pa. at 148, 527 A.2d at 529, quoting *Robinson v. Robinson*, 505 Pa. 226, 237, 478 A.2d 800, 806 (1984) (citations omitted).

*Schwarcz v. Schwarcz*, 378 Pa.Super. 170, 177–78, 548 A.2d 556, 560 (1988).

Appellant first argues that the trial court abused its discretion and endangered the child by denying her petition to suspend appellee's unsupervised visitation. She bases

her claim on her own testimony as to the child's behavior after spending time with appellee, some exegesis of the medical findings, and some of the testimony of the child's psychologist. Since appellant's presentation is, in large measure, an argument that the trial court should have believed her witnesses rather than appellee's, we can only reiterate the principle already cited, that:

> the credibility of witnesses and the weight to be given to their testimony by reason of their character, intelligence, and the knowledge of the subject can best be determined by the judge before whom they appear.

*Lombardo, supra.* The persuasive nature of Judge Clark's credibility findings are bolstered even further by his thoughtful and careful analysis of the proceedings he heard, and his willingness to reassess appellant's accusations. His conclusion, that appellant had consistently fabricated the tale of abuse, was not arrived at lightly, and he pointed out that never had the child complained of ill treatment except in the company and, by implication, at the instigation of appellant. We have been offered no substantive basis on which to reject these findings—quite the opposite.

■ Appellant next assigns error to the trial court's refusal to allow testimony from Dr. Pamela Kane, a licensed psychologist as to what is termed, "the child's developmental and sexual abuse history." (Appellant's Brief at 25) Since Dr. Kane received all of her information as to the child's development and the alleged sexual abuse from appellant, her recitation would merely have presented information already before the court through appellant's testimony. Moreover, any opinion of her own as to the truth of the the accusations is impermissible under the rule in *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986), in which our supreme court held that such evidence invades the province of the factfinder. *See also, Commonwealth v. Gallagher,* 519 Pa. 291, 547 A.2d 355 (1988); *Commonwealth v. Higby,* 384 Pa.Super. 619, 559 A.2d 939 (1989); *Commonwealth v. Emge,* 381 Pa.Super. 139, 553 A.2d 74

(1988); *Commonwealth v. Zamarripa*, 379 Pa.Super. 208, 549 A.2d 980 (1988).

Dr. Kane, who had seen the child some thirty times, was allowed to testify extensively about her actual observations of the child's behavior. The trial court found that as to the ultimate issue of determining the truth of appellant's accusations, this information did not advance the inquiry.

 Next it is claimed that the trial court erred in allowing counsel to cross examine appellant about the results of her prior complaints to Bucks County Children and Youth Services without allowing her to explain these contacts further. It is a firmly entrenched principle of our caselaw that the scope of cross examination is within the control of the trial judge. Herein, as appellee points out, the (permissible) purpose of this inquiry was to undermine appellant's credibility, and to expose her tendency, regardless of its motivation, to cry "wolf." We find the trial court to have been justified in its decision on this issue.

 Appellant next claims, as a separate issue, that which she has insinuated with greater and lesser degrees of insistence throughout her brief, namely bias on the part of the trial judge. It is contended that this negative predisposition dates back as far as April of 1989, yet the record reveals that never before has appellant sought to appeal any action taken by the court, nor has any motion for recusal been filed. Under such circumstances it appears to us that appellant, not the court, engages in *ad hominem* attacks.[2] The trial court's adverse rulings stem from its assessment of appellant as interested only in interfering in the relationship between appellee and the child by any means at her disposal. Given appellant's self proclaimed devotion to the best interests of her child, we find this

**2.** Such accusations are not limited to the trial court. Appellant asserted that at least three of appellee's witnesses, the nurse hired to accompany and observe appellee's visits with the child, a former friend of both parties who testified as to appellant's plans to disrupt the custody schedule, and appellee's mother, had offered perjured testimony.

pattern of behavior which is supported by the record, hypocritical at best.

Finally, appellant argues that the trial court abused its discretion by awarding appellee $2,000 in counsel fees. The trial court had taken this action in reliance on 42 Pa.C.S.A. § 2503(6) and *Brenckle v. Arblaster*, 320 Pa.Super. 87, 466 A.2d 1075 (1983), which allow the assessment of attorney's fees where a party's actions in conducting litigation is arbitrary, vexatious or in bad faith. *Compare, Santilo v. Robinson*, 383 Pa.Super. 604, 557 A.2d 416 (1989). As the court's determination in this regard is based, in the first instance, on its assessment of appellant's credibility, we see no reason to overturn its rulings.

Orders affirmed.