**In re: Amanda GUMPHER,**
**An Adult Individual**

**Appeal of: Kathleen R. Gumpher**

Superior Court of Pennsylvania.

Argued Oct. 22, 2003.

Filed Dec. 17, 2003.

Sean J. O'Brien, Reading, for appellant.

Before: JOHNSON, MONTEMURO *, and TAMILIA, JJ.

JOHNSON, J.:

¶ 1 Kathleen R. Gumpher (Mother) appeals the trial court's order that she reimburse Amanda Gumpher (Daughter) for the full value of an account Mother opened for Daughter under the Pennsylvania Uniform Transfer to Minors Act (PUTMA), 20 Pa.C.S. § 5301, *et seq.* Mother argues that she acted within her rights in liquidating the account and retaining the proceeds, because the prior expenditures that the proceeds were intended to offset were for the direct use or benefit of Daughter. We find no error in the trial court's Opinion and Order. Thus, we affirm.

¶ 2 The facts underlying this controversy are largely undisputed. Daughter was born to Mother and David W. Gumpher (Father) on October 15, 1981. In 1989, Mother and Father divorced, and Mother gained primary custody of Daughter. According to their Post–Nuptial Agreement, Mother and Father were each to pay one half of medical expenses not covered by insurance; each was to contribute to Daughter's college education to the best of his or her abilities.

¶ 3 In 1993, Mother opened a PUTMA account for Daughter with an initial capital contribution of $1570. Mother added to the account with deposits totaling $185 in 1996, $150 in 1997, and $50 in 1998. Thus, the capital contribution Mother made to the PUTMA account totaled $1955.

---

* Retired Justice assigned to the Superior Court.

Thanks to a dividend reinvestment plan and appreciation of the underlying investments, the account had a value of $5601.37, as of December 5, 2000, when Mother closed the account.

¶ 4 In the fall semester of 2000, Daughter matriculated at Ithaca College. She withdrew, however, within weeks of the beginning of the semester. When she returned home, Daughter found that Mother no longer would have her, so Daughter went to live with Father.

¶ 5 Soon thereafter, Mother liquidated the PUTMA account. Rather than turn the proceeds of the liquidation over to Daughter, however, Mother retained the funds. She claims that she was entitled to the funds

as reimbursement for various expenses incurred for the benefit of [Daughter], including braces, a car, a high school class trip to France, and college application and orientation fees. [Daughter] had her braces prior to entering high school. Over the course of a pre-arranged payment schedule, Mother paid $3,480.00 for the braces, the last payment having been made in or about June 1999. The cost of the braces was paid entirely from Mother's own funds.

In or about August 1998, Mother purchased a 1990 Geo Prism. She financed $2,500.00 (one-half of the purchase price) on the belief that Father would pay the other half. According to Mother's testimony, the car was to be for [Daughter's] benefit, but it was titled in Mother's name. [Daughter] testified that the car was simply a second vehicle for the family's use. [Daughter] contributed, even if sporadically, to the car payments until Mother told her that she no longer needed to contribute. The car loan was paid off in February 2000. Mother transferred title to the car to [Daughter] in

the Fall of 2000, prior to [Daughter's] going to college.

In April 2000, [Daughter] took a class trip to France. The cost of the trip was $2,090.00, which Mother paid. Apparently payments were complete by the end of February 2000. [Daughter] testified that Mother paid for this trip as a graduation gift.

Mother also claimed reimbursement for a $55.00 application fee and a $189.00 orientation fee for Ithaca College.

Trial Court Opinion (T.C.O.), 1/23/03, at 2 (footnotes omitted). Mother testified that she did not pay these expenses from the PUTMA account as they occurred for fear of penalties arising from the withdrawals. Moreover, because the expenses enumerated above exceeded the value of the account, Mother claimed that Daughter owed her additional reimbursement exceeding $3600. In support of her claim, Mother cited expenses such as "glasses and contacts, groceries, transportation, and various other ordinary expenses typically incurred in the support of a child," and "$750, which Mother paid to retain her attorney to prepare the requested accounting, which accounting reflects the $750.00 as an expense incurred and paid by the PUTMA account." T.C.O., 1/23/02, at 3.

¶ 6 Daughter did not learn of the existence of the PUTMA account until after the liquidation, when Mother sent Daughter a tax form pertaining to the account closure, which indicated that Daughter was liable for taxes on an account she had not known existed. Subsequently, on September 12, 2002, Daughter filed a Petition for Accounting, Removal of Custodian, and Delivery of Funds Previously Held Under the Pennsylvania Uniform Transfer to Minors Act. Pursuant to the consequent order of the Berks County Orphan's Court, Mother filed a First Intermediate Account and Answer with New Matter to the Peti-

tion. The trial court heard the parties in January 2003, and issued an order a little over a week later, requiring Mother to remit to Daughter the full value of the PUTMA account at liquidation—$5601.37—plus interest calculated from December 5, 2000, the date of liquidation.

¶ 7 Mother challenges the trial court's order, raising the following questions for our review.

A. Whether the Trial Court erred as a matter of law by not permitting the custodian to expend funds for the use and benefit of a minor pursuant to the Pennsylvania Uniform Transfer[s] to Minors Act?

B. Whether the Trial Court erred as a matter of law by not permitting the custodian to expend funds for the use and benefit of the *minor regardless of custodian's duty or ability to personally support the minor* pursuant to the Pennsylvania Uniform Transfer[s] to Minors Act?

C. Whether the Trial Court erred as a matter of law by not permitting a divorced parent to establish, *after the date of separation,* a Pennsylvania Uniform Transfer[s] to Minors Act account and expend the same for the use and benefit of a child?

Brief for Appellant at 4.

As an appellate court we can modify an Orphans' Court decree only if the findings upon which the decree rests are unsupported by competent or adequate evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence. The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion.

*Appeal of Gannon,* 428 Pa.Super. 349, 631 A.2d 176, 182 (1993) (internal quotations and citations omitted). Moreover, because PUTMA is part of a uniform statutory scheme, where Pennsylvania law fails to answer a question arising under PUTMA, we may look to other jurisdictions' resolutions of the question to inform our own, thus encouraging cross-jurisdictional uniformity. *See* 1 Pa.C.S. § 1927 ("Statutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them."); *see Burke v. Valley Lines, Inc.,* 421 Pa.Super. 362, 617 A.2d 1335, 1337 n. 1 (1992); *Sternlicht v. Sternlicht,* 822 A.2d 732, 744 (Pa.Super.2003) (Klein, J., dissenting).

¶ 8 With her first question, Mother contends that PUTMA "permits a custodian to expend funds for the use and benefit of a minor." Brief for Appellant at 8. She imputes to the trial court a ruling "that Amanda did not receive the benefit" of the items listed in the foregoing accounting, and that the court's conclusion was "contrary to the facts." Brief for Appellant at 11.

¶ 9 PUTMA, the successor legislation to the Pennsylvania Uniform Gifts to Minors Act (PUGMA), "provide[s] an inexpensive, easy way for giving property to minors." *Sternlicht,* 822 A.2d at 737. PUTMA provides that "[a] person may make a transfer by irrevocable gift to … a custodian for the benefit of a minor …." 20 Pa.C.S. § 5304. "Whatever its source, custodial property that is held pursuant to Section 5304 is the property of the minor child." *Sternlicht,* 822 A.2d at 737 (citing *Sutliff v. Sutliff,* 515 Pa. 393, 528 A.2d 1318, 1323 (1987)). Section 5311 further provides:

A transfer made pursuant to section 5309 is irrevocable, and the custodial property is indefeasibly vested in the minor, but the custodian has all the

rights, powers, duties and authority provided in this chapter, and neither the minor nor the minor's legal representative has any right, power, duty or authority with respect to the custodial property except as provided in this chapter.

20 Pa.C.S. § 5311(b). Regarding the custodian's discretion in managing the account, PUTMA provides as follows:

§ 5314. Use of custodial property

(a) Without court order.—A custodian may deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the custodian considers advisable for the use and benefit of the minor, without court order and without regard to:

> (1) the duty or ability of the custodian personally or of any other person to support the minor; or

> (2) any other income or property of the minor which may be applicable or available for that purpose.

> \* \* \* \* \* \*

■ (c) Obligation of support not affected.—A delivery, payment or expenditure under this section is in addition to, not in substitution for, and does not affect any obligation of a person to support the minor.

20 Pa.C.S. § 5314. Moreover, "[i]n dealing with custodial property, a custodian shall observe the standard of care that would be observed by a prudent person dealing with the property of another . . . ." *Id.* § 5312(b). Thus, "[a] custodian may not use PUTMA property to benefit himself." *Sternlicht*, 822 A.2d at 740; *see In re Rosenfeld*, 2003 WL 289267 at *3 (Iowa Ct.App. Feb.12, 2003) (unpublished opinion; under Iowa R.A.P. 6.14, litigants may cite unpublished opinions in briefs, though such opinions shall not carry the weight of binding precedent; since we look to out-of-state authorities only for their persuasive effect, we choose to cite this case due to its similarities to the case at bar).

¶ 10 Finally, given the shortage of caselaw under PUTMA, we have in the past, and will presently, look to cases decided by our sister states under their Uniform Gifts to Minors Acts (UGMA), predecessor statutes to the Uniform Transfers to Minors Acts (UTMA). Here and nationwide, UTMA statutes, passed by many states in the 1990's with much the same operative language as their predecessors, have been interpreted in the light cast by caselaw under their respective predecessor UGMA statutes. *See generally Sternlicht*, 822 A.2d 732 (noting that the repeal of PUGMA in favor of PUTMA did not effect this Court's analysis because we cited PUGMA precedent "for relevance, not precedence;" going on to apply caselaw under PUGMA to the PUTMA controversy at hand); *Gulmen v. Gulmen*, 913 S.W.2d 852, 854 (Mo. Ct.App.1995) ("[T]he sometime use of 'gifts' rather than 'transfers' in describing the custodial arrangement is of no significance, and the provisions of the new statute apply."); *Saliba v. Saliba*, 753 So.2d 1095, 1099 n. 4 (Miss.2000) ("It is unclear from the record which act [UGMA or UTMA] was in effect at the time the gifts were made . . . . However, that does not create an issue here because both acts have very similar language . . . ."); *Rosenfeld*, 2003 WL 289267 at *3 (analyzing UTMA questions by reference to UGMA precedent).

¶ 11 Mother's first contention relies on her misapprehension of the trial court's ruling. The trial court clearly did not contend that the expenditures for which Mother seeks reimbursement did not benefit Daughter. Rather, the trial court disagreed

that the PUTMA funds were used for [Daughter's] benefit. [Daughter] received no benefit from the liquidation of the account; rather, Mother received all of the benefit. With the exception of the relatively *de minimis* Ithaca College expenses, all of the expenses that Mother claims for reimbursement were incurred in the too-distant past, ranging from more than eight months to approximately six years, to justify the argument that the PUTMA funds were used for [Daughter's] benefit. [Daughter] had already received the benefit of the expenses incurred. Mother had already paid those expenses from her own funds. With the possible exception of the trip to France, which the Court believes was a gift, all of the expenses incurred were ordinary expenses typically paid by a parent for the benefit of her child.

T.C.O., 1/23/03, at 4 (boldface added). Thus, the question is not whether Daughter benefited from the items and expenses Mother includes in her accounting, as Mother would have it. Even the trial court allowed that, with the sole possible exception of the trip to France, "all of the expenses [cited by Mother] were ordinary expenses typically paid by a parent for the benefit of her child." T.C.O., 1/23/03, at 4 (boldface added).

¶ 12 The flaw in Mother's argument is its defiance of the plain language of PUTMA. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *see Sternlicht*, 822 A.2d at 740. PUTMA, however, says nothing about retroactive reimbursement. Rather, it provides that, without a court order, "[a] custodian may deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the custodian considers advisable for the use and benefit of the minor ...." 20 Pa.C.S. § 5314(a)

(boldface added). Previously, in the context of another question, this Court has noted that Section 5314 is unambiguous. *See Sternlicht*, 822 A.2d at 740.

■ ¶ 13 Due to Mother's misunderstanding, or mischaracterization, of the question the trial court answered and the answer itself, she obfuscates the fact that the trial court stated the law correctly by its terms. The trial court was correct to note that, regardless of what the expenditures may have offset, the liquidation itself accrued to Mother's benefit rather than Daughter's. By misstating the issue and by failing to direct us to authority that persuasively urges a contrary result, Mother leaves us no choice but to uphold the trial court's ruling. Thus, Mother's liquidation of Daughter's PUTMA account for Mother's immediate benefit constituted a breach of Mother's custodial responsibilities to Daughter under the plain language of PUTMA, and the trial court did not err in so ruling.

¶ 14 With her second question, Mother asserts that PUTMA allows a custodian to "expend funds for the use and benefit of the minor regardless of custodian's duty or ability to personally support the minor." Brief for Appellant at 11. The trial court observed "that a parent's obligation to support minor children is independent of the minor's assets. UGMA funds may not be used to fulfill the parent's support obligation where the parent has sufficient means to discharge it himself." T.C.O., 1/23/03, at 5 (quoting *Sutliff*, 528 A.2d at 1320).

■ ¶ 15 We agree with Mother that the *Sutliff* case addressed the availability of PUTMA funds to supplant the withdrawing parent's child support obligation. Brief for Appellant at 12. Again, however, Mother misstates the trial court's usage of authority and the general proposition the

court stated. In *Sutliff,* our Supreme Court observed that

> the ... legal obligation of parents is to provide for the reasonable expenses of raising the child. Indeed, parents have a duty to support their minor children even if it causes them some hardship. The cost of raising children is a function of several factors including custom, the children's needs and the parents' financial status. [The purpose of child support is] to provide for more than bare necessities. Superior Court has consistently held that a parent's support duty is not affected by a minor child's own means or earning potential.

528 A.2d at 1322 (citations omitted). In *Perlberger v. Perlberger*, this Court noted "that the principles espoused by our Supreme Court [in *Sutliff*] are both instructive and applicable here, where wife, *though not a support obligor,* is subject to the general duty to support her children." 426 Pa.Super. 245, 626 A.2d 1186, 1201 (1993) (emphasis added). In *Sternlicht,* this Court held that

> [a] custodian abuses his discretion and acts improperly if he expends funds from a PUTMA account for the purpose of fulfilling his support obligation in lieu of making the payments out of his own income and assets, where the parent has sufficient financial means to discharge it himself. PUTMA accounts may not be used for support before the parents expend their own resources.

*Sternlicht,* 822 A.2d at 741. The plural "parents" in the last sentence of that passage makes clear that the principle expressed applies not just to non-custodial support obligors, but to both parents, without regard to marital or custodial status. Thus, reading *Sutliff, Sternlicht,* and *Perlberger* together, we find that Section 5314's provision that PUTMA "use and benefit" expenditures are "in addition to, and not in substitution for, any parental support obligation" applies to the more amorphous "support obligations" of the custodial parent as well as those of the "support obligor."

■ ¶ 16 The trial court acknowledged that the trip to France might fall outside the bounds of the support obligations incident to parenthood. Many of the other expenses alleged by Mother, such as those for "glasses and contacts, groceries, transportation, and various other ordinary expenses typically incurred in the support of a child," T.C.O., 1/23/03, at 3, fall within the range of the above-stated rule and thus are subject to *Sutliff's* requirement that Mother first have demonstrated the exhaustion of her own resources before permitting her to reach into Daughter's PUTMA account. Mother argues that she "did not have may [*sic*] assets or means to allow her children to maintain the lifestyle they were accustom[ed to]," and that she "needed" to reach into the PUTMA account to maintain Daughter's lifestyle, Brief for Appellant at 14. She fails, however, to direct us to evidence of record in support of her argument, and also fails to explain how she could have fronted these expenses as many as six years before liquidating the PUTMA account if she lacked the resources to afford these expenses incident to raising Daughter. As for the trip to France, the trial court found that this was a graduation gift, a factual finding that we will not disturb because it is supported by competent evidence. Consequently, Mother's second question lacks merit.

¶ 17 With her third question, Mother defends a divorced parent's right to expend a PUTMA account "for the use and benefit of a child." Brief for Appellant at 14. She argues that "[i]f this Court was [*sic*] to find that [Mother] expended the funds to discharge her general duty to

support her child, this Court would make it impossible for a divorce[d] parent to utilize the provisions" of PUTMA. Brief for Appellant at 14. The two paragraphs of argument that follow, which fail to provide even one citation to the authority that informs Mother's thinking, simply do not support her argument. The trial court did not find that the PUTMA account in question could never be used for such expenses. Indeed, under *Sutliff, Sternlicht*, and *Perlberger*, the PUTMA account could have been expended to that end, but only if Mother could demonstrate that her own resources had been expended without entirely satisfying her support obligation to Daughter. Moreover, the trial court's ruling fundamentally turned on the *post hoc* nature of the reimbursement as much as the nature of the expenses Mother sought to reimburse.

¶ 18 Thus we address briefly a question of first impression under PUTMA: whether the trial court abused its discretion in holding that Mother may not reimburse herself long after the fact for expenses previously incurred for the use and benefit of the child for whose benefit the account was created. Regardless of the propriety of the expenses so claimed, addressed at length *supra,* the trial court did not err in construing the language of PUTMA narrowly to require that such expenditures come straight from the PUTMA account, or at least be used to reimburse Mother considerably more quickly than Mother did in this case, where some of her claimed expenses predated the liquidation of the PUTMA account by as many as six years. *Cf. Rosenfeld,* 2003 WL 289267 at *3 ("Looking at Martin's accounting, we find only $5,819.54 of legitimate *expenses* which were paid for Natalie's benefit after January 1995[, when the UTMA account in question was liquidated]." The court concluded that expenses incurred prior to dissolution of the UTMA account, without regard to their propriety as to the use or benefit of the child, could not be charged retrospectively against the UTMA account, thus he was liable to return them.).

¶ 19 Notwithstanding Mother's assertions to the contrary, this conclusion hardly "make[s] it impossible for a divorce[d] parent to utilize" PUTMA accounts; it merely requires, first, that a divorced parent heed the cautions of *Sutliff* and *Perlberger* regarding the normal expenses incident to parenthood, and second, that the parent withdraw such funds as are properly chargeable to the PUTMA account from that account at or very near the time the expenses are actually incurred.

¶ 20 Concurring in the judgment in *Sutliff,* Justice McDermott noted:

> The issue here is not whether the father is able to support his children; he is. The issue is rather can a father take back a gift he gave. The answer must be no, unless a father's gift is never a gift. If one chooses to make a gift to his children, he cannot later take it back by deducting from that patrimony what he owes in support payments.

528 A.2d at 1326 (McDermott, J., concurring) (citation omitted). Having already noted that *Sutliff*'s principles apply to a parent's support obligations incident to custody as well as those of a non-custodial parent's child support obligations, we find Justice McDermott's comments germane to the present dispute, where the record suggests, as did the trial court, that "there is more behind the story than a simple attempt by Mother to reimburse herself for expenses incurred for Amanda's benefit." T.C.O., 1/23/03, at 3. We find that the trial court committed no error of law. Thus, we affirm.

¶ 21 Order AFFIRMED.