J-A28027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ESTATE OF: ZOE M. WEINBERG, A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: MATTHEW DAVID WEINBERG | No. 1448 EDA 2014 |

Appeal from the Order of February 18, 2014
In the Court of Common Pleas of Montgomery County
Orphans' Court at No.: 2013-X0876

BEFORE:  GANTMAN, P.J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.:                **FILED DECEMBER 10, 2014**

Matthew David Weinberg ("Father") appeals the February 18, 2014 order that confirmed the accounting of Zoe M. Weinberg's ("Child") Pennsylvania Uniform Transfers to Minors Act ("UTMA") account and dismissed his objections thereto.  We affirm.

Father and Michelle Weinberg ("Mother") separated in December 2008 and divorced in August 2012.  They shared physical custody of Child, who was born in December 2005.  In 2006, Mother opened a savings account for Child, which is the UTMA account at issue.

On February 26, 2013, Father filed a petition for an accounting of Child's UTMA account and to remove Mother as the custodian of the

account.[1] Father alleged that Mother had removed money from the account and used it for improper purposes. Father sought an accounting, asked to be named the new custodian of the account, and requested counsel fees in connection with the petition. In her answer to the petition, Mother denied Father's allegations and asserted that she only withdrew funds from the account for the benefit of Child when Mother's own funds were depleted. Mother also asserted that she replenished the funds when she was able to do so.

On May 3, 2013, the orphans' court ordered Mother to file an accounting of her administration of the UTMA account. Mother filed her accounting. Father objected. On November 19, 2013, the orphans' court conducted a hearing on the accounting and Father's objections.

Following the hearing, on February 18, 2014, the court confirmed Mother's accounting. The orphans' court summarized the hearing and procedural history as follows:

> The account covers the period from December 26, 2006 through July 2, 2013, and shows a balance of principal and income in the amount of $15,001.25, composed of cash.

> The account was filed pursuant to Section 5319 of the [Probate, Estates, and Fiduciaries] Code, as directed in this Court's order dated May 3, 2013. The custodianship continues.

> All parties having or claiming any interest in the custodial property of whom the accountant has notice are stated to have

---

[1] Father also sought an accounting of a second account. The order as it relates to that account has not been appealed.

received written notice of the audit in conformity with the rules of court.

The instant objections were filed by [Father]. The accountant is [Mother. Child] is now 8 years old. The parents separated in December of 2008 and spent four years litigating their divorce, support and custody issues. The battle now continues in this Court. In his objections, [Father] contends [Mother] spent the funds in their daughter's account improperly.

At the hearing, [Mother] testified that she and [Father] have joint legal and physical custody over [Child]. She listed various expenditures incurred by her in repairing and maintaining the marital residence after the couple separated and before its sale. She testified that [Father] paid support, initially, in varying amounts voluntarily and later pursuant to an agreed order entered in the Chester County Court of Common Pleas. [Father] is currently obligated to pay $686.00 per month in child support.

[Mother] stated that she is a social worker for the School District of Jenkintown and earns approximately $28,000 per year.

Regarding the account at issue, [Mother] stated that she funded it with $25.00 in 2006. She produced a spread sheet showing deposits to and withdrawals from the account. She also produced a spread sheet showing hundreds of expenditures for clothes, toys, furniture, camp tuition, groceries, entertainment, gas, family therapy, etc., between 2006 and 2013. The expenditures on the later spread sheet were cross-referenced on the spread sheet with deposits and withdrawals. The majority of the deposits were from [Mother's] own funds; a few deposits represented gifts to [Child] from other family members. [Mother] explained that, even though she was using UTMA funds for [Child's] benefit, she tried to replenish the account with her own money when she could. As an example, she withdrew $7,279 [] from her 401(k) pension account established at a former job and deposited most of it into the UTMA account. [Mother] opined that [Father] sought to compel her to file this account as a way to be relieved of his child support obligation.

In response to questions from the Court, [Mother] clarified that the source of the deposits shown on the spread sheet was her own funds, except for one $12,000 gift from [Father's] mother and some other family gifts over the years.

During cross-examination, [Mother] acknowledged that the July 23, 2012 consent order filed in Chester County obligated

- 3 -

[Father] to pay her $800 per month, in addition to the $686 for [Child], and that she has received these payments in a timely fashion. She stated that [Father] refused to pay for camp for [Child], even though the consent order directed him to do so. She denied that [Father] gave her any cash between the time they separated and when the support order went into effect. She stated that [Father] lent her money to pay real estate taxes during that period. Regarding a $7,000 withdrawal from the account on April 26, 2011, [Mother] described this as a "balance transfer" she received on a new credit card, the proceeds of which she withdrew immediately and deposited into her own checking account. [Mother] stated her legal bills for the divorce proceedings totaled approximately $50,000, which she charged on her credit cards. She estimated the legal cost for the current litigation to be $11,000.

Counsel for [Mother] then cross-examined [Father]. This testimony established only that the couple fought over everything, including visitation rights to the family dog.

[Mother] rested and [Father] was called to testify by his counsel. He testified that most of [Child's] preschool tuition was paid by his mother, not from the UTMA funds. He testified about a Quicken spread sheet he prepared relating to his checking account transactions for the period from January 3, 2009 to May 2, 2012. The spreadsheet reflected transfers to and for the benefit of [Mother] and [Child], including payments for home maintenance, utilities, taxes, health care, clothes and school costs. Also introduced was a sheet with a breakdown by category of these expenses totaling $152,217.73.

[Mother] testified on rebuttal. She denied receiving the total amount alleged to have been paid by [Father] . . . .

Order and Memorandum, 2/18/2014, at 2-5 (citations to notes of testimony omitted).

Following the hearing, the orphans' court dismissed Father's objections, denied his request to be appointed custodian, and denied both parties' requests for counsel fees. On March 10, 2014, Father filed exceptions to the February 18, 2014 order. On March 20, 2014, Mother filed

cross-exceptions. On April 10, 2014, the orphans' court dismissed both the exceptions and cross-exceptions.

On May 12, 2014, Father filed a notice of appeal.[2] The orphans' court did not order, and Father did not file, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The court did not file a Pa.R.A.P. 1925(a) opinion, and instead relied upon the memorandum and accompanying February 18, 2014 order.

Father raises four issues for our review:

I. Whether the auditing court erred in finding that Mother was permitted to invade [Child's] UTMA account because Mother did not have the ability to use her own funds to support [Child].

II. Whether the auditing court erred in failing to grant Father's petition for removal of [Mother] and return of the funds and in dismissing Father's objections to the accounting in that the court's findings were not supported by the evidence.

III. Whether the auditing court erred by failing to make a finding that the expenditures benefited [Child].

IV. Whether the auditing court erred [in] finding that Father was motivated to pursue this matter in part to harass Mother.

Father's Brief at 4.

Our standard of review is well settled:

_____

[2] May 10, 2014, the thirtieth day following the order becoming final, fell on a Saturday. Therefore, Father's May 12, 2014 notice of appeal, filed on the following Monday, was timely.

As an appellate court we can modify an Orphans' Court decree only if the findings upon which the decree rests are unsupported by competent or adequate evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence. The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion.

*In re Gumpher*, 840 A.2d 318, 321 (Pa. Super. 2003).

As a custodial account, Child's account is controlled by the Pennsylvania UTMA. That act establishes the duties of a custodian and provides that a custodian's standard of care is one "that would be observed by a prudent person dealing with property of another." 20 Pa.C.S.A. § 5312. The Act also outlines the permissible uses of the minor's property by the custodian as follows:

**(a) Without court order. –** A custodian may deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the custodian considers advisable for the use and benefit of the minor, without court order and without regard to:

(1) the duty or ability of the custodian personally or of any other person to support the minor; or

(2) any other income or property of the minor which may be applicable or available for that purpose.

**(b) With court order. –** On petition of an interested person or the minor if the minor has attained 14 years of age, the court may order the custodian to deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the court considers advisable for the use and benefit of the minor.

**(c) Obligation of support not affected. –** A delivery, payment or expenditure under this section is in addition to, not in substitution for, and does not affect any obligation of a person to support the minor.

20 Pa.C.S.A. § 5314.

In **Sutliff**, our Supreme Court observed that

> the ... legal obligation of parents is to provide for the reasonable expenses of raising the child. Indeed, parents have a duty to support their minor children even if it causes them some hardship. The cost of raising children is a function of several factors including custom, the children's needs and the parents' financial status. [The purpose of child support is] to provide for more than bare necessities. [The] Superior Court has consistently held that a parent's support duty is not affected by a minor child's own means or earning potential.

**Sutliff v. Sutliff**, 528 A.2d 1318 1322 (Pa. 1987) (citations omitted). In **Perlberger v. Perlberger**, this Court noted "that the principles espoused by our Supreme Court [in **Sutliff**] are both instructive and applicable here, where wife, *though not a support obligor*, is subject to the general duty to support her children." 626 A.2d 1186, 1201 (Pa. Super. 1993) (emphasis added). In **Sternlicht**, this Court held that

> [a] custodian abuses his discretion and acts improperly if he expends funds from [an UTMA] account for the purpose of fulfilling his support obligation in lieu of making the payments out of his own income and assets, where the parent has sufficient financial means to discharge it himself. [UTMA] accounts may not be used for support before the parents expend their own resources.

**Sternlicht v. Sternlicht**, 822 A.2d 732, 741 (Pa. Super. 2003). The plural "parents" in the last sentence of that passage makes clear that the principle expressed applies not just to non-custodial support obligors, but to both parents, without regard to marital or custodial status. Thus, reading **Sutliff**, **Sternlicht**, and **Perlberger** together, we find that Section 5314's provision that [UTMA] "use and benefit" expenditures are "in addition to, and not in substitution for, any parental support obligation" applies to the more amorphous "support obligations" of the custodial parent as well as those of the "support obligor."

**Gumpher**, 840 A.2d at 324 (citations modified).

In his first challenge, Father contends that the orphans' court erred by allowing Mother to use UTMA funds for everyday support and by finding that Mother did not have her own funds available for Child's support. Father argues that, because another court in support proceedings found that Mother had a certain earning capacity, the orphans' court could not find that Mother had a lower income available to her. Father also alleges that the evidence did not support the orphans' court's determinations. Father asserts that Mother's testimony regarding her lack of personal funds was not credible. Father's Brief at 10-16.

Our decisional law is clear that UTMA funds cannot be used to meet a parent's child support obligation. *See Sutliff*, 528 A.2d at 1324 (holding that parent's support obligation could not be satisfied through use of children's custodial accounts when father had sufficient personal funds to meet children's needs); *Sternlicht*, 822 A.2d at 740 (holding that father could not use child's UTMA funds to purchase a new house when there was no evidence that house was for the use and benefit of child). However, when a parent cannot provide for the child through the parent's assets, the child's funds may be used. *See Gumpher*, 840 A.2d at 324 (holding that mother must demonstrate that her assets were exhausted before invading child's UTMA account); *Sternlicht*, 822 A.2d at 741 (remanding for inquiry into whether father could pay child's private school tuition from father's assets). Nothing in this case law indicates that the court must look beyond Mother's actual assets or consider Mother's hypothetical earning capacity.

Here, Mother claimed that she did not have the funds that were required to support Child. Notes of Testimony ("N.T."), 11/19/2013, at 136, 162. The orphans' court found that Mother only used Child's funds when she had no other means by which to pay Child's expenses. T.C.O. at 6. The court specifically credited Mother's testimony. "Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." *In re Estate of Harper*, 975 A.2d 1155, 1159 (Pa. Super. 2009). Based upon that testimony, the orphans' court determined that Mother did not invade Child's UTMA account unless her funds were exhausted. Our review of the record finds support for the court's credibility determinations. There was no abuse of discretion.

In his second issue, Father also challenges the court's credibility determinations and fact-finding. Father asserts that Mother's exhibits were contradictory and that her lists of withdrawals from the UTMA account and expenditures on behalf of Child were inconsistent. Father's Brief at 17-19.

Mother's counsel provided argument and Mother was cross-examined extensively regarding her expenditures for Child and the differences between her list of withdrawals from the UTMA account and her list of expenditures for Child's benefit. N.T. at 85-106, 109-11. While there were discrepancies, Mother provided explanations for them. For example, some receipts had deteriorated or were illegible and were not included in the list of expenditures. Mother also testified that some of the differences arose

because she kept some cash on hand for incidentals, like tipping child care employees and making cash payments for home repairs. *Id.* at 75, 103. The orphans' court found this testimony to be credible. Because there is record support for these findings, we find no abuse of discretion.

Father next claims that the orphans' court failed to make a specific finding that Mother's expenditures were for the use and benefit of Child. Instead, Father claims that Mother used these funds for everyday living expenses and for Mother's benefit. Father's Brief at 20-21.

As noted above, UTMA "accounts may not be used for support before the parents expend their own resources." *Gumpher*, 840 A.2d at 324 (quoting *Sternlicht,* 822 A.2d at 741). In *Perlberger*, 626 A.2d at 1200, we considered whether a mother could invade her children's custodial accounts for various expenses such as lessons for the children, tutoring, taxes, trips, entertainment, medical bills, child care, and food. Although we ultimately remanded the case because of an incomplete record, we nonetheless held that the determining factors were whether the expenditures were for the children's benefit and whether they were reasonable.[3] *Id.* at 1202.

Here, the court did not make an explicit finding that the expenditures were for the use and benefit of Child. However, there is no requirement that

---

[3]    We also noted that certain expenses, such as legal bills and the wife's individual therapy, were not for the benefit of the children. *Id.*

the court use that "magic language." Instead, the orphans' court recognized that prior decisional law allowed for the use of UTMA funds, even for everyday expenses, when a parent had exhausted his or her own resources and the funds were used reasonably for the child's benefit. T.C.O. at 5-6. By citing this law, the orphans' court implicitly found that Mother's use of the funds was for Child's benefit. The orphans' court found Mother's testimony about the availability of her own resources and her use of the UTMA funds credible. *Id.* at 6. Again, as the record supports these findings, the orphans' court did not abuse its discretion.

Finally, Father argues that the orphans' court erred in finding that he was motivated partially to harass Mother. Father contends that the only way the court could have reached this conclusion was to consider testimony from Mother that Father successfully objected to as non-responsive or irrelevant. Father asserts that he brought this action only to seek an accounting of Child's UTMA account. Father's Brief at 21-23.

Because both sides sought counsel fees, the court was required to examine the parties' intent and actions during the litigation. To impose fees under 42 Pa.C.S.A. § 2503(7) or (9), the court must make a specific finding of dilatory, obdurate, vexatious, or arbitrary conduct or bad faith. *Yeager v. Kavic*, 765 A.2d 812, 815 (Pa. Super. 2000); *see* 42 Pa.C.S.A. § 2503(7), (9) (permitting an award of counsel fees for "dilatory, obdurate

or vexatious conduct" during the pendency of a matter or for conduct in commencing a matter that was "arbitrary, vexatious or in bad faith").[4] Further, such an award can be based upon a court's credibility determinations. *M.C. v. R.W.*, 580 A.2d 1124, 1127 (Pa. Super. 1990), *overruled on other grounds by* *G.B. v. M.M.B.*, 670 A.2d 714 (Pa. Super. 1996) (*en banc*).

Father testified that he never asked Mother for an informal accounting before filing the demand for one with the court. N.T. at 188. Father admitted that he had access to the bank statements from both of Child's accounts prior to initiating this litigation. Further, Father admitted that he sought an accounting for the second account even though the bank statements showed an initial deposit and no subsequent withdrawals. *Id.* at 189. Based in part upon this testimony, the orphans' court found that "it appears [Father] was motivated to pursue this matter in equal parts to harass his ex-wife and to protect [Child's] assets." T.C.O. at 6. However, this finding played no role in the final order. While the court questioned the purity of Father's motives, it did not award counsel fees or otherwise sanction Father because it did not find that Father acted solely with frivolous or vexatious intent. *Id.* The court's conclusion regarding Father's intent is

_____

[4] Father sought counsel fees pursuant to 42 Pa.C.S.A. § 2503(7) in his petition for an accounting, and Mother sought counsel fees pursuant to 42 Pa.C.S.A. §§ 2503(7) and (9) in her answer and counterclaim.

not at odds with the record and it had no discernable impact upon the final order.  We find no abuse of discretion.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/10/2014