547 A.2d 393

**Lawrence R. HALLER, Appellant,**

**v.**

**Mary M. HALLER.**

Superior Court of Pennsylvania.

Argued June 28, 1988.

Filed Sept. 6, 1988.

---

James E. Richardson, Whitehall, for appellant.

William L. Koslosky, Easton, for appellee.

Before TAMILIA, KELLY and HESTER, JJ.

TAMILIA, Judge:

Appellant father appeals a September 2, 1987 Order which granted primary physical custody of the parties' two minor children to appellee mother, and directed that father be given liberal visitation rights. The facts and procedural history surrounding the appeal follow.

The parties are the parents of Lawrence R.S. Haller, born June 1, 1980, and Laura E.R. Haller, born April 19, 1982. The parties were divorced in February of 1985; father remarried in October of 1986, and mother has not yet remarried. Father is a career United States Army officer. Mother is a full-time baby-sitter for her brother's six children. The family resided in Georgia until June of 1984 when father was assigned to serve as an Army R.O.T.C. officer on the campus of Lehigh University in Pennsylvania. At that time father moved to Pennsylvania, taking the children with him, while mother was unaware of the move because she was attending Army Reserve Training. On July 5, 1984, father filed a complaint seeking custody of the two children.[1] An Order was entered that same day directing mother to appear at a July 30, 1984 hearing. Subsequently, on August 2, 1984, the court ordered home studies

---

[1] Mother had, in the meantime, filed for divorce in Georgia, and for custody of the children; this complaint was served on father on July 2, 1984. The Lehigh County court, after hearing oral argument and examining certain documents, ordered on March 28, 1985, that jurisdiction of the case was appropriate in and accepted by that court. Mother elected on April 4, 1985, to treat the March 28, 1985 Order as a final Order, pursuant to Pa.R.A.P. 311(b). She then on April 12, 1985 filed notice of appeal with this Court. The outcome of that appeal was that father's motion to quash the appeal was granted by a Superior Court Order dated May 29, 1985, and filed June 17, 1985 in Lehigh County courts.

to be performed.[2]

On October 9, 1985, the court entered an Order which awarded immediate temporary physical custody to the mother in accordance with an agreement by the parties. Soon afterwards, father sought visitation, and on December 13, 1985, the court issued a rule to show cause why father's petition for visitation should not be granted; the petition was dismissed, however, on December 19, 1985, for father's failure to appear. The parties instead entered a stipulation whereby father's visitation rights over the Christmas 1985 holiday were set out. The court approved the stipulation by an Order dated December 24, 1985 and filed January 7, 1986. After the Christmas 1985 visit, father again filed a petition for visitation and a rule to show cause was filed by the court on February 5, 1986. On May 20, 1986, the parties entered a stipulation regarding visitation which was adopted as an Order of court.

On April 15, 1987, father filed a petition for confirmation of custody, which is the subject of this appeal. In the petition father alleged that joint custody for two years had been awarded on October 8, 1985 in open court. Father averred that his remarriage and family stability and the instability of mother's family living conditions, both present and future, constituted a substantial change of circumstances which warranted a change in the Order, and that the children's best interest and permanent welfare would be served by granting the requested relief. In the petition he pointed to mother's move from Georgia to Booneville, New York. He also sought an expeditious resolution of the matter since he had orders from the U.S. Army to relocate to Germany for five years commencing November 1987.[3] A home evaluation of father's Pennsylvania home was ordered on May 19, 1987 and filed July 8, 1987. A home study of the mother's Booneville, New York, home was ordered June 19, 1987. The court entered an Order on May 22, 1987

2. These home studies were filed on September 12, 1984 on father's Pennsylvania home, and January 23, 1985, on mother's Georgia home.

3. Father was later ordered to relocate to Teagu, Korea, where he is to serve a two-year tour of duty, rather than Germany.

granting mother physical custody of the children for much of the summer of 1987.

At the end of July 1987, father petitioned to modify the stipulations; the court entered an interim Order on July 21, 1987 which granted father custody of the children from August 9, 1987 until the hearing on the matter, and which vacated the mother's home evaluation Order of June 19, 1987 and replaced it with a new home evaluation Order. After a hearing before the custody hearing officer and upon the officer's recommendation, the court on August 17, 1987 initially ordered the parties to have joint legal custody of the two children, with primary physical custody resting with the father, except for the summers of 1988 and 1989. Mother filed a demand for a de novo hearing on August 18, 1987. The mother's home study report was filed by evaluator Patricia A. Connovitch on August 12, 1987. Mother also petitioned for special relief and stay of court Order from the hearing officer's recommendation dated August 17, 1987 until completion of a de novo hearing before the court. On August 20, 1987, the court granted a de novo hearing, with priority status, and denied the request for a stay. After the de novo hearing, the court filed, on September 15, 1987, an Order dated September 2, 1987 granting primary physical custody of the children to the mother with liberal visitation rights to the father, who is now stationed in Korea on a two-year assignment. Other provisions for the children's well-being were also part of the Order. Mother filed a praecipe to enter judgment on September 28, 1987 and judgment was entered against father that same day. Father filed this appeal on October 1, 1987.

On appeal father concedes that a substantial change of circumstances from the time of the entry of the October 9, 1985 stipulation existed in this matter [4] in that he had been ordered by the U.S. Army to relocate at a base in Teagu,

4. We acknowledge the Supreme Court recently held in *Karis v. Karis*, 518 Pa. 601, 544 A.2d 1328 (1988) that a petition for modification of partial custody to shared custody Order requires the court to inquire into the best interests of the child regardless of whether a "substantial" change in circumstances has been shown.

Korea. He argues, however, that the court erred in several ways. First, he says the hearing judge acted like an interested participant instead of an arbitrator; for this allegation he cites the judge's emphasis on the mother's testimony, which he says was in direct conflict with the testimony of disinterested witnesses, e.g., the children themselves. The father urges the court failed to consider testimony regarding reports the children had made to him of incidents which occurred while they were in New York with their mother including their having ridden in the car trunk for long distances, Larry's hunting with the two minor children of the boyfriend of the mother without adult supervision, and Laura's having been spanked very hard by the mother's boyfriend; instead, the court believed the mother's explanation of these events.

Next, father urges the court failed to consider all of the factors relevant to deciding the issue of custody, particularly the physical well-being and moral development of the children. He points out that the youngsters have lived their entire lives with him, with the exception of November 1, 1985 to August 2, 1986, when they lived with their mother. Father also points to the testimony of home evaluator, Patricia Connovitch, who said father provides a stable, secure, and predictable home environment for the children and that the children have a good relationship with him and his new wife. He also points to the home evaluator's statement that Laura is very bonded to her father and should go with him, and the concern the evaluator expressed about the mother's home. Additionally, father brings out the testimony of Marie Pelletiers, a clinical psychologist, who had met with him and his family, to the effect that he provides a stable, predictable nurturing environment, whereas mother is in a period of transition; she, too, noted Laura's attachment to the father. He urges the separation of the children from him during his two-year tour of duty in Korea "can well be emotionally devastating to them." Further, father urges the court failed to consider certain evidence regarding the stable environment he could provide for the children in Korea, the efforts of both him

and his new wife to aid the children in their school work, and the children's expressed desire to go with him.

Additionally, father finds error in the court's failure to inquire into mother's boyfriend, Kevin Crouse, whom she intends to marry and with whom the children will be spending much of their time. He also charges the trial judge failed to consider the adverse moral effect on the children of sleeping in the same one-room cabin with mother and the man she intends to marry.

Moreover, he argues mother is immature as to caring for the children; he says this is evidenced by mother's attitude toward support payments and her statement that on a scale of one to ten, love is ten and money is one, and that she gives the children love.

Last, father contends the court is required pursuant to statute to consider which parent is more likely to encourage, permit and allow frequent and continuing contact and physical access between the non-custodial parent and the child. *See* 23 Pa.C.S. § 5303. Here, he says the court erred in not considering the many attempts of mother in the past to prevent the children from having contact with him.

■■■■ Our standard of review in custody matters was set forth in *Mahoney v. Mahoney*, 354 Pa.Super. 585, 512 A.2d 694 (1986), where we said:

[W]e as an appellate court are "empowered to determine whether the trial court's incontrovertible factual findings support the trial court's conclusions, but may not interfere with those conclusions *unless they are unreasonable in light of the trial court's factual findings* ... and, thus, represent a gross abuse of discretion." The burden of proving that the trial court's custody decree is manifestly erroneous or constitutes a gross abuse of discretion rests on appellant. Absent such proof, we must affirm the decision of the trial judge who has the singular advantage of observing the demeanor of the parties and hearing the testimony of the witnesses.

*Mahoney* at 590, 512 A.2d at 696–97. (Citations omitted) (emphasis in original). *See also Lombardo v. Lombardo,* 515 Pa. 139, 527 A.2d 525 (1987).

In *Gonzalez v. Gonzalez,* 337 Pa.Super. 1, 486 A.2d 449 (1984), we stated:

> [T]he guiding principle in a child custody matter is to reach a decision which serves the "best interests" of the child. This interest encompasses the child's physical, intellectual, emotional and spiritual well-being. In order to achieve this goal, an appellate court must closely scrutinize the factual findings of the lower court. If we ascertain, on review, that those factual findings are not supported by competent evidence, said findings are not binding upon us.

*Id.,* 387 Pa.Superior Ct. at 4, 486 A.2d at 451 (citations omitted).

In the present matter, the trial judge explains in his Opinion the reasons upon which he determined it to be in the best interest of these young children that they be in the custody of their mother. The court said there was very little question in this case that both parents are fit to raise the children. The court found the mother has provided the children with a nurturing, loving environment, which included interaction with their extended family. The court also found that the lifestyle of the mother has become more stable since she moved to New York from Georgia. Further, the court accepted her testimony that she and the children resided at the family homestead, a four-bedroom cape cod house in Boonville, and only visited the cabin which her boyfriend is constructing.

■■■ A thorough review of the record does not reveal any instance where the trial judge became an active participant in this case rather than an arbitrator, as is argued by father. Instead, the record shows the judge presided over two days of testimony by witnesses who included father and his new wife, mother, mother's former boyfriend, the home evaluator, a psychologist hired by father who counselled him and his new wife and the children, a U.S. Army

R.O.T.C. administrator who had served a favorable tour of duty in Korea in 1983–84, mother's brother who had been stationed in Korea as a U.S. Marine in 1977–81, mother's sister, and the children themselves. At the close of testimony, mother's counsel reminded the court of the fact that father was leaving for Korea the next day; the judge responded that he would make the decision in the same day, without any comment or objection from father's counsel. We cannot agree with father's contention that the fact that the trial court "took only one-half hour to render its decision considering the many factors to be reviewed in this case, clearly demonstrates that the lower court rendered its decision in a summary and capricious fashion." Appellant's brief at p. 47. Moreover, we disagree with father's allegation that the trial judge did not base his decision on competent evidence, since we find the evidence relied upon in this matter was competent, and the trial judge was in a position to evaluate the credibility of mother's testimony. Likewise, we reject father's argument that the court erred in failing to consider the physical well-being and moral development of the children, and the stability of the environment which he provides them. The trial judge did not find father fails to provide a stable environment for the children; to the contrary, he found both parents to be fit. Additionally, he made a finding for the record, based on the evidence, that mother's lifestyle is now more stable than it was when she lived in Georgia. As far as the contention that the court disregarded the children's expressed preference, we find no error in the trial court's conclusion that Laura, age five at the time of the hearing, was too young to express any rational understanding of where she would like to be. The son, Larry, who was age seven at the time of the hearing, gave as reasons for wanting to go with his father the fact he had never been to Korea before and that his father was going to get him into Karate school there. (N.T. 9/2/87, pp. 140–141.) Although the children expressed a preference of remaining with their father, the weight to be given their preference is to be determined by the trial judge. *Commonwealth ex rel. Grimes v. Grimes,* 281 Pa.Super. 484,

422 A.2d 572 (1980). "[I]t is the responsibility of the trial judge to weight that preference according to the age, intelligence, and maturity of the child." *Ellingsen v. Magsamen,* 337 Pa.Super. 14, 19 n. 2, 486 A.2d 456, 458 n. 2 (1984) (citing *Commonwealth ex rel. Pierce v. Pierce,* 493 Pa. 292, 426 A.2d 555 (1981)). Here, we find no error in the trial judge's determination.

Additionally, we find father's argument that mother's statement regarding support demonstrates immaturity on her part to be without merit.

Contrary to father's contention, the court did examine which parent would be more likely to allow frequent and continuing contact between the non-custodial parent and the children insofar as the court found the ability of mother to visit the children would be seriously curtailed if the children were in Korea since it would be too expensive for mother to travel to Korea on commercial flights; father, on the other hand could visit the children in the United States much more readily by travelling with military travel reduced fares. We do reject the court's allusion to preferring to see the children with the mother than on an Army base in Korea, and preference for having the children at their "very young age" with the mother (Slip Op., 2/24/88, Diefenderfer, J., pp. 5–6) as bordering on the irrelevant. In carefully reviewing this record, we cannot help but feel in light of a reversal of previous stipulations and orders wherein the parents had shared custody with the father having primary physical custody (Order of August 17, 1987) that the court was overly concerned about the father's military duty in Korea combined with the children's age. Peacetime duty in a country not at war, where the armed services provide accommodations for families of servicemen, must be considered no more relevant to an award of custody than service on a military base in this country. As to the reference to the "very young age" of the children, the trial court must be constantly vigilant in avoiding any inclination to be influenced by the mere youthfulness of the children. *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368

A.2d 635 (1977), teaches that the tender years doctrine has been abrogated in Pennsylvania and where the scales are relatively balanced between the parents, the makeshift weight of the tender years doctrine is offensive to the constitutional principle of equality of the sexes.

Next, we consider father's argument the court erred by failing to inquire about mother's boyfriend, Kevin Crouse. Father cites *J.F.G. v. K.A.G.*, n/b/m K.A.K., 278 Pa.Super. 25, 419 A.2d 1337 (1980), in which he says the Court found the trial court had failed to complete the record, because father's parents and mother's new husband did not testify, and the children there would be making their home with one or the other; without such testimony, the trial court could not make a valid comparison of those persons' respective attitudes toward the children and their ability to care for them. The Court in *J.F.G.*, however, also based its decision on the fact the trial court received no testimony from any disinterested source, nor did it have any testimony from any social worker or other investigator concerning the living conditions of the parties and their respective homes; also, the court believed the trial court might have improperly relied on the tender years doctrine.

In the instant case, home evaluator Patricia Connovitch testified that she had met with Kevin Crouse and that he appeared to have a good relationship with the children. (N.T., 9/1/87, p. 104). Mother testified that she and the children would be staying at her cape code home; (N.T., 9/2/87, p. 59), and Kevin Crouse lives with his parents (N.T., 9/2/87 at 60). The court also asked mother questions regarding Crouse's employment status and living arrangements. (N.T., 9/2/87, pp. 106–107). However, as this Court said in *Constant A. v. Paul C.A.*, 344 Pa.Super. 49, 496 A.2d 1 (1985), where the custodial parent would be living in a meretricious relationship with another person, or a person will exert a substantial influence over the child, it requires that that person be viewed by the court and subjected to cross-examination as to his supervision, values and relationship with the children.

In this case, in light of the frequent contacts with the children by Crouse, his disciplining of them, being with them and the mother on camping trips, and in general acting in a quasi-parental role, it would appear unavoidable to have him present in court to determine his effect on the well being of the children and his fitness to be in constant association with them.

While we understand the difficulty in making a determination of custody in a case such as this where both parents appear to be fit, aside from the error in not requiring testimony from Kevin Crouse, we find no basis for reversal. However, so critical is the requirement that all essential relationships to the children be evaluated, this case must be remanded for that purpose as it might effect the ultimate determination by the court.

Order of custody vacated, case remanded for testimony consistent with this Memorandum. Should the court find, upon receiving testimony from Mr. Crouse, there should be no changes in the Order vacated, he shall reinstate the Order; otherwise an appropriate Order shall be entered.

Jurisdiction relinquished.