J-A22002-25          2026 PA Super 28

| | | |
|---|---|---|
| HERMES HUGO AVILA ORELLANA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIA MAGDALENA CHUVA CHUVA | : | No. 1223 EDA 2025 |

Appeal from the Order Entered April 29, 2025
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2024-001155

BEFORE: LAZARUS, P.J., SULLIVAN, J., and STEVENS, P.J.E.[*]

OPINION BY LAZARUS, P.J.:                    **FILED FEBRUARY 12, 2026**

Hermes Hugo Avila Orellana ("Stepfather") appeals from the order, entered in the Court of Common Pleas of Delaware County, denying his request for certain Special Immigrant Juvenile Status ("SIJ" or "SIJS") findings. After review, we reverse and remand for entry of an order consistent with this opinion.

Stepfather and Appellee Maria Magdalena Chuva Chuva ("Mother") are the parents of A.T.M.C. (born 03/2006) and T.J.M.C. (born 04/2007) ("Children"). Children's biological father, Braulio Ramiro Molina Zuniga ("Biological Father"), is deceased.

On February 7, 2024, Stepfather filed a custody complaint requesting "joint legal and joint physical custody" of Children. Custody Complaint, 2/7/24, at ¶ 3. The complaint also sought "child welfare determinations

_____

[*] Former Justice specially assigned to the Superior Court.

necessary to enable [C]hildren to seek [SIJS] before the United States Citizenship and Immigration Services [("USCIS")], pursuant to 8 U.S.C. § 1101(a)(27)(J) and 8 C.F.R. § 204.11." *Id.* at ¶ 12. Stepfather supported this request by averring that "[t]he best interest and permanent welfare of [C]hildren will be served by granting the relief request[ed] because [C]hildren's [B]iological [F]ather is deceased, [Stepfather] and [Mother] are married[,] and [Stepfather] and [Mother] want [Stepfather] to have full legal capacity to co-parent [C]hildren." *Id.* at ¶ 9. The proposed orders attached to Stepfather's complaint requested the court find that: (1) Children were both under the age of 21; (2) the award of joint custody to Stepfather and Mother is in Children's best interests; (3) reunification with Children's Biological Father is not viable following his death; and (4) returning Children to Ecuador[1] would not be in their best interests because Stepfather and Mother can provide for their basic necessities in a safe, secure environment that is more conducive to their well-being. *See* Proposed Orders, 2/27/24.

Stepfather then filed a petition for special relief, pursuant Pa.R.C.P. 1915.13,[2] on February 23, 2024, requesting an order scheduling an expedited

_____

[1] The Proposed Orders contained a typographical error which indicated that Guatemala, rather than Ecuador, was their country of origin.

[2] Pennsylvania Rule of Civil Procedure 1915.13 provides, in relevant part, that:

> At any time after commencement of the action, the court may on application or its own motion grant appropriate interim or special relief. The relief may include . . . the award of temporary legal or

*(Footnote Continued Next Page)*

evidentiary hearing before A.T.M.C. turned eighteen "for the purpose of a temporary custody determination and for making judicial findings necessary for [Stepfather]'s minor child to seek [SIJS.]"  Petition for Special Relief, 2/23/24, at 1 (unpaginated).  On March 1, 2024, the custody court issued an order scheduling a hearing on April 15, 2024.  Because the scheduled hearing would take place after A.T.M.C. turned eighteen, which would have rendered the custody court unable to make a custody determination, Stepfather and Mother entered into a joint stipulation, as well as a proposed order, that they filed with the custody court to explain that the hearing needed to take place prior to A.T.M.C's eighteenth birthday for her to remain SIJS eligible.[3]  **See** Stipulation, 3/1/24, at 1-2 (unpaginated).

In response, on March 4, 2024, the custody court issued an order finding the custody complaint and stipulation moot after being misinformed that Children had turned "[eighteen] years of age[] as of March 4, 2024."[4]  Order, 3/4/24.  Stepfather then filed an amended custody complaint and an amended

---

physical custody [or] the issuance of appropriate process directing that a child or a party or person having physical custody of a child be brought before the court[.]

Pa.R.C.P. 1915.13.

[3] The Uniform Child Custody Jurisdiction and Enforcement Act defines a "child" as "[a]n individual who has not attained 18 years of age."  23 Pa.C.S.A. § 5402.

[4] Stepfather takes responsibility for the trial court's mistaken belief as to Children's ages at the time because of a "typographical error" on the confidential information form he filed with his first custody complaint.  **See** Appellant's Brief, at 6.

petition for special of relief on March 5, 2024, the latter of which clarified Children's ages for the trial court and reiterated that Children would not turn eighteen until March 7, 2024 and April 7, 2025, respectively. **See** Amended Petition for Special Relief, 3/5/24, at ¶ 3.

On March 5, 2024, the custody court issued two orders. The first order: (1) vacated the court's March 4, 2024 order; (2) recognized Children's correct dates of birth; and (3) reiterated that Stepfather's petition for special relief had been scheduled for a hearing on April 15, 2024. The second order granted Stepfather and Mother joint legal and physical custody of Children.

The custody court held a hearing on Stepfather's request for special relief on April 15, 2024. The custody court then issued an order on May 1, 2024, denying Stepfather's request for SIJS findings. Stepfather appealed from that order to this Court, whereafter, on December 13, 2024, we remanded the case for further analysis in light of **Velasquez v. Miranda**, 321 A.3d 876 (Pa. 2024). **See Orellana v. Chuva**, 333 A.3d 35 (Pa. Super. 2024) (Table).

On remand, the custody court held a hearing on March 31, 2025. At the hearing, Stepfather called only Mother to testify. She testified to, *inter alia*, the following: (1) Mother and Stepfather have been living together and taking care of Children since their arrival in the United States; (2) Children are happy living with Mother in the United States; (3) Children do not have any relatives that would be able to take care of them in Ecuador; (4) Mother believes it would be in Children's best interests to remain in the United States; (5) six of

Mother's eight siblings reside in Ecuador; (6) Mother's remaining siblings reside in the United States; (7) A.T.M.C. graduated from high school and J.T.M.C. was on track to graduate high school at the time of the hearing. *See* N.T. Hearing, 3/31/25, at 20-26.

Following the hearing, on April 29, 2025, the custody court issued its findings of fact and conclusions of law and once again denied Stepfather's request for SIJS findings. *See* Order, 4/29/25. Stepfather timely appealed on May 12, 2025, and both Stepfather and the custody court have complied with Pa.R.A.P. 1925. Stepfather raises the following questions for our review:

> 1. Whether the custody court erred in denying [Stepfather]'s request for SIJ findings based on its conclusion that [Stepfather] is seeking SIJ findings solely for the purpose of obtaining lawful permanent resident status for [C]hildren, where the parties stipulated that the purpose of seeking joint custody was to facilitate co-parenting due to the death of [C]hildren's [biological] father and, because the trial court's conclusion addresses SIJ eligibility under 8 C.F.R. § 204.11(b)(5)[,] which is a determination within the exclusive jurisdiction of USCIS?
>
> 2. Whether the custody court erred in concluding that the death of [C]hildren's biological father does not constitute a basis under [s]tate law similar to abuse, neglect[,] and abandonment sufficient to find that [C]hildren's reunification with the deceased parent is not viable within the meaning of 8 U.S.C. § 1101(a)(27)(J) and 8 C.F.R. § 204.11?
>
> 3. Whether the custody court erred in considering the care the parties are currently providing [C]hildren in making its parental reunification determination for SIJ purposes?
>
> 4. Whether the custody court erred in denying [Stepfather]'s request to find that it is not in the best interests of [C]hildren to be returned to Ecuador after it concluded that it was in the best interests of [C]hildren to award joint custody to the parties by approving the parties' stipulation for joint legal and shared physical custody?

Appellant's Brief, at 2-3.

> We begin by noting the standard and scope of our review:
>
> When considering pure questions of law, our standard of review is *de novo* and our scope of review is plenary. *See Int. of K.T.*, [] 296 A.3d 1085, 1104 ([Pa.] 2023). We generally do not "interfere with the trial court's factual conclusions unless they are unreasonable in view of the trial court's factual findings and[,] thus[,] represent an abuse of discretion." *T.B. v. L.R.M.*, 786 A.2d 913, 916 ([Pa.] 2001); *see also Int. of K.N.L.*, [] 284 A.3d 121, 132-33 ([Pa.] 2022) ("In matters arising under the Adoption Act, as well as appeals of child custody and dependency decisions, our plenary scope of review is of the broadest type; that is, an appellate court is not bound by the trial court's inferences drawn from its findings of fact, and is compelled to perform a comprehensive review of the record for assurance the findings and credibility determinations are completely supported.") (internal quotation marks omitted). Likewise, while we have a broad scope of review, we cannot nullify the fact-finding function of the judge presiding over the custody hearing or their ability to make credibility determinations. *See Lombardo v. Lombardo*, [] 527 A.2d 525, 529 ([Pa.] 1987).

*Velasquez*, 321 A.3d at 891.

Stepfather first contends that the trial court erred in taking into consideration his motivation in seeking SIJS for Children because "it is not within the custody court's purview to examine a party's motivation for initiating a custody action[.]" Appellant's Brief, at 11. According to Stepfather, the custody court's role is "to determine whether there is a factual basis for making the necessary SIJ determinations, not to pre-judge the SIJ petition filed with USCIS." *Id.* While Stepfather agrees with the trial court "that federal regulations authorize USCIS to withhold consent for SIJ status if USCIS determines that the request for SIJ classification is not bona fide[,]" he maintains that "the custody court plays no role in determining whether a

- 6 -

request for SIJ findings is bona fide." *Id.* at 17. Instead, that "determination is within the exclusive jurisdiction of USCIS, pursuant to 8 C.F.R. § 204.11(b)(5)." *Id.* Thus, Stepfather posits, "[t]he custody court's role is simply to identify children who cannot reunite with one or both parents due to abandonment, abuse, neglect, or a similar basis under State law . . . or be safely returned in their best interests to their home country." *Id.* at 18. Stepfather asserts that "[t]he task of weeding out bad-faith applications falls to USCIS, which engages in a much broader inquiry than state courts." *Id.*

Stepfather also claims that the trial court misconstrued his requests and statements in coming to its conclusion regarding his motivation. *Id.* at 15-16. Stepfather avers the trial court should have looked to Stepfather's custody complaint and proposed orders, wherein Stepfather requested the trial court "find that it was in the best interest of [the] children to award joint custody to the parties so that [] Stepfather can co-parent with [] Mother." *Id.* at 16.

The custody court's reasoning on this issue is, to be frank, confusing. Although in the first paragraph of its analysis, the trial court states that:

> [Stepfather] is mistaken in [his] belief that the trial court denied [his] request for SIJ findings based on its belief that [he] sought SIJ findings solely for the purpose of obtaining lawful permanent status for the minor children. Rather[,] there were a number of factors in this case that led the court to conclude that the minor children, in this case, did not qualify for a[n] SIJ finding.

Custody Court Opinion, 6/26/25, at 3. However, the custody court then goes on to spend the next several paragraphs, which are entirely devoid of citation to the record or applicable case law, explaining why it believed Stepfather and

- 7 -

Mother sought SIJS for Children and concluding: "[t]hus, a [c]ourt could logically reason that the more likely purpose for [Stepfather] and [Mother] seeking an order in custody is merely for immigration purposes." *Id.* at 5.[5]

The custody court also concludes that 23 Pa.C.S.A. § 5323(h) precludes an award of custody here because, according to its interpretation, the statute requires that:

> [p]arties in [the] same residence must be living separate and apart in order to seek relief under the child custody statute[. M]oreover, a custody order, should the parties reside in the same residence, shall only be effective upon one of them physically vacating the residence or an order awarding one party exclusive possession of the residence.

*Id.* at 5. The trial court surmises that, based upon its reading of the statute, its findings should thus be affirmed, and Stepfather's requests denied. *Id.*

We agree with Stepfather that the trial court inappropriately usurped the role of USCIS and improperly based its denial, in part, on its determination as to Stepfather and Mother's motivations for seeking the custody order and SIJS findings for Children. In *Velasquez*, the Pennsylvania Supreme Court thoroughly discussed the bifurcated roles of USCIS and state courts contemplated by the Immigration and Nationality Act ("INA"). *See*

_____

[5] We consider the custody court to have displayed an "inappropriate preoccupation with Child[ren]'s legal status[.]" *Zayas v. Brizuela*, 334 A.3d 363, *6 (Pa. Super. 2025) (Table); *see also* Trial Court Opinion, 6/26/25, at 4 ("Both [Stepfather] and [Mother]'s testimony appear to be guided by their motivation to provide testimony that satisfies the requirements necessary to qualify for SIJS."); Order, 4/29/25, at 6 ("Thus, the [c]ourt can reasonably assume that the more likely reason for Mother and Stepfather seeking an order in custody was merely for immigration purposes.").

*Velasquez*, 321 A.3d at 891-96, 901-08. Our Supreme Court summarized and delineated those roles as follows:

> Paragraph (b) of Section 204.11 provides a child is eligible for SIJ status if [he or] she meets all of the following requirements:
>
> (1) Is under 21 years of age at the time of filing the petition;
>
> (2) Is unmarried at the time of filing and adjudication;
>
> (3) Is physically present in the United States;
>
> (4) **Is the subject of a juvenile court order(s) that meets the requirements under paragraph (c) of this section**; and
>
> (5) Obtains consent from the Secretary of Homeland Security to classification as a special immigrant juvenile. For USCIS to consent, the request for SIJ classification must be bona fide, which requires the petitioner to establish that a primary reason the required juvenile court determinations were sought was to obtain relief from parental abuse, neglect, abandonment, or a similar basis under State Law. USCIS may withhold consent if evidence materially conflicts with the eligibility requirements in paragraph (b) of this section such that the record reflects that the request for SIJ classification was not bona fide. USCIS approval of the petition constitutes the granting of consent.
>
> 8 C.F.R. § 204.11(b) (emphasis added). A "juvenile court" is "a court located in the United States that has jurisdiction under State law to make judicial determinations about the dependency and/or custody and care of juveniles." *Id.* at § 204.11(a).
>
> [Subsection] (c) of Section 204.11, titled "[j]uvenile court order(s)," describes the requisite contents of state court orders that would support SIJ classification in subsequent USCIS proceedings:
>
> (1) Court-ordered dependency or custody and parental reunification determination. The juvenile court must have made certain judicial determinations related to

the petitioner's custody or dependency and determined that the petitioner cannot reunify with their parent(s) due to abuse, neglect, abandonment, or a similar basis under State law.

(i) The juvenile court must have made at least one of the following judicial determinations related to the petitioner's custodial placement or dependency in accordance with State law governing such determinations:

(A) Declared the petitioner dependent upon the juvenile court; or

(B) Legally committed to or placed the petitioner under the custody of an agency or department of a State, or an individual or entity appointed by a State or juvenile court.

(ii) The juvenile court must have made a judicial determination that parental reunification with one or both parents is not viable due to abuse, abandonment, neglect, or a similar basis under State law. The court is not required to terminate parental rights to determine that parental reunification is not viable.

(2) Best interest determination.

(i) A determination must be made in judicial or administrative proceedings by a court or agency recognized by the juvenile court and authorized by law to make such decisions that it would not be in the petitioner's best interest to be returned to the petitioner's or their parent's country of nationality or last habitual residence.

(ii) Nothing in this part should be construed as altering the standards for best interest determinations that juvenile court judges routinely apply under relevant State law.

8 C.F.R. § 204.11(c). The term "judicial determination" as used in the regulation is defined as "a conclusion of law," but USCIS also requires the SIJ petitioner provide "the factual basis for the requisite [judicial] determinations." *Id.* at §§ 204.11(a),

(d)(5)(i). Pursuant to these federal provisions, then, an immigrant child seeking SIJ status must come to USCIS bearing a state court order with the requisite judicial determinations — and their factual basis — regarding dependency or custody, reunification, and the child's best interest.

Accordingly, a state court presented with a request such as Mother's for SIJ judicial determinations pertaining to her minor children is expressly authorized by federal law to issue the SIJ order when:

(1) The court has exercised its jurisdiction as authorized by Pennsylvania law to determine the dependency and/or custody and care of a child;

(2) Reunification with one or both of the child's parents is not viable due to abuse, abandonment, neglect, or a similar basis under Pennsylvania law; and

(3) It is not in the child's best interest to be returned to the child's or their parent's country of nationality or last habitual residence.

*See* 8 C.F.R. § 204.11(a), (c) & (d)(5)(i); 8 U.S.C. § 1101(a)(27)(J); *see also Orozco* [*v. Tecu*], 284 A.3d [474,] 477 [(Pa. Super. 2022)]. It is USCIS that decides whether to grant the child an immigration benefit; the state judicial determinations and their supporting facts do not confer or guarantee an immigration status to the child. *See, e.g.*, *Orozco*, 284 A.3d at 476-77 ("Under the federal SIJ scheme, the state court does not render an immigration decision but rather makes factual determinations predicate to USCIS's SIJ determination."); *H.S.P.* [*v. J.K.*], 121 A.3d [849,] 858 [(N.J. 2015)] ("By making these preliminary factual findings, the juvenile court is not rendering an immigration determination."). But our courts must perform the role the federal scheme ascribes to them, which is what they are uniquely and especially equipped to do: decide questions related to a child's custody, dependency, and best interest, and evaluate allegations of parental mistreatment.

*Velasquez*, 321 A.3d at 894-95.

Therefore, based upon our reading of the plain language of the federal statute and our Supreme Court's interpretation of the same, a party's

motivation for seeking the predicate factual determinations required for SIJS is not within the state court's purview. Subsection 204.11(b)(5) makes clear that USCIS' consent to an SIJ classification is dependent upon its determination that the request is bona fide, which requires the petitioner to establish that its primary reason for seeking SIJS was proper. *See* 8 C.F.R. § 204.11(b)(5). Furthermore, the statute provides that USCIS, not the custody court, may withhold consent if "the record reflects that the request for SIJ classification was not bona fide." *Id.* We are bound by our Supreme Court's proclamation that "our courts must perform the role the federal scheme ascribes to them, which is what they are uniquely and especially equipped to do: decide questions related to a child's custody, dependency, and best interest, and evaluate allegations of parental mistreatment." *Velasquez*, 321 A.3d at 895. Because neither our Supreme Court nor the federal statutes require a court to determine a petitioner's motivations in its delineation of the state court's role in the federal scheme, a petitioner's motivation is an inappropriate ground for a custody court to base its SIJS findings on.

In its April 29, 2025 order and its Rule 1925(a) opinion, the custody court relied upon its findings regarding Stepfather and Mother's motivations for seeking SIJS for Children. *See* Order, 4/29/25 at 5 ("[Stepfather's] request is in direct contradiction to the federal government's directive that an order not be sought primarily for purposes of obtaining lawful immigration status[.]"); *see also* Custody Court Opinion, 6/26/25, at 5 ("a [c]ourt could logically reason that the more likely purpose for [Stepfather] and [Mother]

- 12 -

seeking an order in custody is merely for immigration purposes"). This reliance on Stepfather and Mother's motivations was inappropriate here.[6] However, because the custody court had other bases for denying the requested SIJS findings, we turn to Stepfather's next issues raised on appeal, both of which address the custody court's rationale for denying the requested predicate SIJS findings regarding parental reunification. As such, we will consider them jointly.

Stepfather avers that the custody court erred when it concluded that the death of Biological Father is not a sufficient basis to find that reunification with the deceased parent was not viable for SIJ purposes. *See* Appellant's Brief, at 19-23. Stepfather avers that the custody court erred in its framing of Stepfather's argument and the required finding for SIJ purposes when it stated that it was "not inclined to find the accidental death of a 23-year-old-adult, who died on the job, the equivalent of abandonment." *Id.* at 22-23; Trial Court Opinion, 6/26/25, at 7. Stepfather posits that he does not need to show that Biological Father's death is an "equivalent" basis under state law to abandonment, abuse, or neglect, but, instead, only that it is "similar" to those

_____

[6] As Stepfather's first issue dealt with the custody court's rationale for not making SIJ findings, the custody court's position that "23 Pa.C.S.[A]. § 5323(h) precludes an award in custody in this case" is misplaced. More importantly, it is misapplied. Subsection 5323(h) applies to "[p]arties living separate and apart in the same residence" seeking relief under Pennsylvania's child custody statute. Here, Stepfather and Mother are married, not separated. As the statute does not apply based upon its plain language, and because we have found no case law indicating that it should or does impact the award of custody, we find the trial court's interpretation to be erroneous.

grounds under state law. Appellant's Brief, at 23. It is Stepfather's position that Biological Father's death "left [Children] without provision for reasonable and necessary care or supervision[,]" which he believes to be sufficiently similar for the purposes of the predicate SIJS determinations. *Id.*

Stepfather correctly identifies that this is an issue of first impression for Pennsylvania courts. *Id.* at 19. Given the dearth of guidance in this jurisdiction regarding whether to grant SIJS status based upon the death of a parent, Stepfather identifies appellate court decisions from Maryland and New York that found the death of a parent to constitute a sufficient "similar basis."[7] *Id.* at 19-21. Stepfather also points to **Velasquez**, which he contends "signaled that Pennsylvania custody courts have wide latitude to interpret Pennsylvania law in finding whether reunification is not viable due to abandonment, abuse, neglect[,] or [a] similar basis under state law." *Id.* at 21.

Furthermore, Stepfather claims it was error for the custody court to have considered the care Mother and Stepfather are currently providing Children when refusing to make the requisite SIJS determinations. *Id.* at 24.

---

[7] Stepfather also claimed that a California court has "considered the issue and [] found that death can constitute a similar basis under state law[,]" and cited to **Eddie E. v. Superior Court**, 167 Cal.Rptr.3d 435 (Cal. Ct. App. 2013). Appellant's Brief, at 19, 21. However, while the minor child's parent in **Eddie E.** was deceased, the court did not consider the question of whether the death of a parent could constitute a "similar basis" under state law; instead, the case was remanded because the trial court incorrectly held it could only make the requisite SIJS findings if the minor child had been designated a dependent of the trial court. **Eddie E.**, 167 Cal.Rptr.3d at 438, 439-40.

According to Stepfather, the current care he and Mother are providing "is irrelevant, because the SIJ statute and regulations only require a finding that parental reunification with *one or both* parents is not viable." ***Id.*** (emphasis in original) (citations omitted).

The custody court noted that "[t]he federal provisions do not define abandonment, abuse, or neglect for purposes of determining whether reunification with a parent is viable," and "expressly allow courts to consider any 'similar' basis under State law to conclude reunification is not viable." Custody Court Opinion, 6/26/25, at 5 (citing 8 U.S.C. § 1101(a)(27)(J)(i)). Here, the custody court did not consider "the death of a parent, under the[] circumstances, to be a 'similar basis' as abandonment." Custody Court Opinion, 6/26/25, at 6. The custody court noted the definition for "abandoned" under Pennsylvania's Uniform Child Custody Jurisdiction and Enforcement Act, which states, "left without provision for reasonable and necessary care or supervision." ***Id.*** (quoting 23 Pa.C.S.A. § 5402). The custody court also pointed out that, after Biological Father passed away, Mother provided Children with reasonable and necessary care supervision. Custody Court Opinion, 6/26/25, at 6. It reasoned that:

> Though it is unclear whether the federal government intended to include scenarios where a parent has remarried over a decade ago, and later seeks to argue abandonment due to the death of the other biological parent over a decade ago, this court [] does not find that this is what the Pennsylvania courts contemplated when determining concerns of child [] abandonment, abuse[,] and neglect.

- 15 -

Order, 4/29/25, at 6. The custody court also considered Stepfather's presence in Children's lives, noting that he assumed parental responsibilities for Children at least ten years prior to the petition and is a legally recognized parent for Children. *Id.* at 6-7.

Turning to the relevant statutory language, the INA defines a "special immigrant," in part, as one who

> is present in the United States . . . who [a juvenile court] has legally committed to, or placed under the custody of . . . an individual or entity appointed by a State or juvenile court located in the United States, and **whose reunification with [one] or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law**[.]

8 U.S.C.A. § 1101(a)(27)(J)(i) (emphasis added). As quoted above, section 204.11 describes the requisite contents of state court orders that would support SIJ classification, in part, as: "[a c]ourt-ordered dependency or custody and parental reunification determination." 8 C.F.R. § 204.11(c)(1). The custody court must have determined "that the petitioner cannot reunify with their parent(s) due to abuse, neglect, abandonment, or a similar basis under State law." *Id.*

According to our Supreme Court, the operative question regarding the reunification finding is whether "the facts found by the court . . . support[] the SIJ predicate determinations that reunification with [a parent] is not viable due to abuse, neglect, abandonment, **or a similar basis under state law**[.]" *Velasquez*, 321 A.3d at 905-06 (emphasis added). Our inquiry as to this finding may be guided by Pennsylvania's statutory definitions of relevant

terms under the Domestic Relations Code.[8]  *See id.* at 905 n.2.  Here, adhering to the statutory text, we find that trial court erred when it concluded that Biological Father's passing did not constitute a similar basis under state law.

Mother testified at the March 31, 2025 hearing that Biological Father passed away in December of 2010.  *See* N.T. Hearing, *supra*, at 19. Therefore, reunification between Children and Biological Father is an impossibility.  Yet, the custody court did not consider Biological Father's death "the equivalent of abandonment."  Custody Court Opinion, 6/26/25, at 7. However, the relevant federal statute, regulation, and case law do not require an "equivalent" basis under state law—only a "similar" basis.  Therefore, the custody court erred when it essentially required Stepfather to prove an equivalent basis under state law as opposed to a similar one.[9]  *See Velasquez*, 321 A.3d at 903-04 ("Indeed, the federal provisions expressly

_____

[8] While we have already provided the statutory definition of "abandoned" above, the Domestic Relations Code defines "[s]erious physical neglect" as, *inter alia*, "[a] repeated, prolonged[,] or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities" or "[t]he failure to provide a child with adequate essentials of life, including food, shelter[,] or medical care" when such failure "endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development[,] or functioning[.]"  23 Pa.C.S.A. § 6303.

[9] Additionally, we believe the custody court's rationale would lead to absurd results.  Under its logic, if Biological Father were still living, but lived halfway around the world and played no role in Children's lives, Children would have a stronger case for the predicate SIJS findings.

allow courts to consider any 'similar basis under State law' to conclude reunification is not viable.").

Furthermore, the custody court considered it a negative factor that Stepfather and Mother have been together when it decided Stepfather's request for SIJS findings. *See* Custody Court Opinion, 6/26/25, at 5-6 ("Nor were the[ children] without a parent, if we are to consider their family structure upon entry into the U.S., as this court believes [it] should."). However, neither the statute nor regulatory guidance speak to a situation where the surviving parent is married or in a relationship and where the parent's partner contributes to the minor children's lives.[10]  Therefore, following the language of the statute, state law, and our Supreme Court's guidance, we find that the custody court erred as a matter of law when it held that Biological Father's death was not a "similar basis" under state law in refusing to make the requisite predicate SIJS determination.

Lastly, Stepfather claims the custody court erred when it denied his request to find that it is not in Children's best interests to be returned to Ecuador. *See* Appellant's Brief, at 25. Stepfather avers that Mother provided sufficient testimony regarding Children's living situation with her and

_____

[10]  Section 1101 defines a "child," as the word is used in certain sections of the INA, in part, as "a stepchild, . . . provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred[.]"  8 U.S.C.A. § 1101(b)(1)(B).  We consider this evidence that, in drafting the INA, Congress considered stepchildren and stepparents and could have drafted a provision excluding children whose sole surviving parent had remarried from SIJS if it so desired.

Stepfather in the United States and the lack of a definite caregiver for Children in Ecuador to establish that it was not in Children's best interest to be returned there. *Id.* Stepfather homes in on the custody court's credibility determination regarding Mother's testimony as to whether the parties have family living in Ecuador, as well as its reliance on the "possibility" that this potential extended family could provide Children with a safe and secure environment. *Id.* Additionally, Stepfather maintains that the custody court's decision to award custody to him and Mother is essentially, in itself, a determination that it would be in Children's best interests to remain with Mother and Stepfather. *Id.* at 26-27 (citing *Velasquez*, 321 A.3d at 908).

The custody court asserts that its award of joint custody to Stepfather did not entail a best interest analysis because Stepfather and Mother "did not seek the [custody] court to do so." Custody Court Opinion, 6/26/25, at 8. In support of its ultimate conclusion, the custody court recounted the following facts: (1) Stepfather and Mother resided together for ten years in Ecuador; (2) most of Children's extended family remains in Ecuador; (3) Mother has six siblings in Ecuador; (4) there was an absence of testimony as to whether Children have a relationship with Biological Father's family or of the possibility that Children would have a safe and secure environment with a paternal relative in Ecuador; (5) when Children arrived in the U.S., they were approximately 14-16 years old and had spent their entire lives in Ecuador; (6) Children only attended, at most, one or two grades of school, respectively, in the United States; (7) there was no testimony presented as to what life

- 19 -

Children had in Ecuador and whether or not they were thriving; (8) Stepfather has other minor children who remain in Ecuador; (9) and there were no allegations of abuse, harm, or of a threat to Children's well-being prior to their departure from Ecuador, nor were there claims that Children lacked educational opportunities, food, or childcare in Ecuador. *See* Custody Court Opinion, 6/26/25, at 8-9.

Based upon those facts, the custody court inferred that "[C]hildren have deeper cultural and familial ties to Ecuador[] then [sic] they have in the United States." *Id.* at 9. The trial court also did not find Mother's testimony credible that there was no one in Ecuador ready, willing, or able to care for Children based on the above facts regarding the extent of Children's extended family in Ecuador. *Id.* at 8. The trial court concluded that it "did not find that it was not in the best interest[s] of [C]hildren to return to Ecuador in part because many of [C]hildren's contacts and/or community remain in Ecuador." *Id.* at 9.

Petitioners seeking predicate SIJS findings need only establish eligibility by a preponderance of the evidence. *See Velasquez*, 321 A.3d at 906 (collecting cases). Here, we find that Stepfather met that burden. Mother testified, *inter alia*, that she and Stepfather were raising Children here in the United States, that Children were happy here, that they were on track academically, and that she thought it was in their best interests to remain in Pennsylvania. *See* N.T. Hearing, 3/31/25, at 20-21, 25-26.

We acknowledge the trial court's credibility determinations regarding Mother's family in Ecuador and their potential ability to care for Children. However, even if each of Mother's six siblings in Ecuador were willing to care for Children, we would not consider that sufficient evidence, as weighed against the uncontroverted parts of Mother's testimony, to deny finding that it was not in Children's best interests to return to Ecuador. The possibility that Mother was not forthcoming about the availability of relatives to take care of Children does not automatically render the rest of the testimony insufficient to establish, by a preponderance of the evidence, that it is not in Children's best interest to return to Ecuador.

Hypotheticals aside, the record before us provides no support for the possibility that the Children's relatives in Ecuador are willing or able to adequately care for the Children but does provide evidence that Children are adequately cared for by Mother and Stepfather in Pennsylvania. Yet, the custody court refused to determine that it was not in Children's best interests to be returned to Ecuador. Based on all of the foregoing, we find that the custody court's refusal to make the predicate SIJS best interest determination was an abuse of discretion. *See Monroy v. Chavez*, 2025 WL 2850744, at *5 (Pa. Super. Oct. 8, 2025) (Table) [11] (determining it was not in best interest of child living with Mother, Mother's long-term boyfriend, Mother's brother,

_____

[11] *See* Pa.R.A.P. 126(b) (unpublished, non-precedential memorandum decisions of Superior Court filed after May 1, 2019 may be cited for their persuasive value).

and Mother's other two minor children to be returned to Guatemala); **Zayaz v. Brizuela**, 334 A.3d 363, *7 (Pa. Super. 2025) (Table) (determining it was not in best interest of child living with family who were adequately caring for her needs to be returned to neglectful parents in Honduras).

Based on the foregoing, we reverse and remand this matter to the trial court and direct it to enter an order for Children containing predicate SIJS determinations and corresponding factual support consistent with this memorandum. **See Velasquez**, 321 A.3d at 908-09; **see also Zayas** 334 A.3d 363, *7 (remanding with instructions for trial court to enter order with predicate SIJS determinations and requisite factual findings); **Orozco**, 284 A.3d 474 (Pa. Super. 2022) (remanding with instructions for trial court to enter order with predicate SIJS determinations and requisite factual findings).

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Stevens, PJE., joins the Opinion.

Sullivan, J., Concurs in the Result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/12/2026

- 22 -